## Grove *versus* Hodges.

1. Garner, for 25 cents per ton, sold to Irwin the right to mine, take and carry away the iron-ore on and in his land, and Irwin agreed to pay the 25 cents per ton and $30 for each acre of land destroyed by mining operations; this agreement to extend to the heirs and assigns of the parties. *Held,* that this was not a grant of a corporeal interest, but a grant of a right to take ore from the land.

2. The agreement was signed and sealed by Garner and also " William Irwin [seal], by agent McH.," there was no sealed authority by Irwin to the agent, nor did he adopt the seal or ratify it by a sealed instrument. *Held,* that the deed was not Irwin's deed and none of its covenants his covenants.

3. Irwin having accepted the grant it bound him to the same extent as if he had personally signed and sealed it; but the mode of enforcing the obligation was different.

4. Even executory agreements bind both parties, though signed and sealed by one and only signed by the other, though the agreement has "witness the hands and seals of the parties," manifesting the intention that both should seal.

5. The rule that contracts must be mutual and bind both parties or neither, does not mean that in every case each must have the same remedy for a breach.

6. Where the contract is wholly executory, the engagement of one may be in writing and the other in parol.

7. In no case where the consideration is a covenant or a promise is the form of the undertaking material; it is the substance.

8. Want of mutuality is no defence except in cases of executory contracts.

9. A chancellor will not enforce a contract which is one sided. But he will interfere at the suit of a complainant who has discharged his part before the undertaking of the defendant was made or contemporaneously with it.

10. A deed to a married woman or an infant is not void because a note taken for the consideration is irrecoverable.

11. A deed may be undone for fraud but not for want of mutuality.

12. The consideration for a deed of bargain and sale must be a valuable one, but it need not be expressed in the instrument if a consideration be averred and parol evidence may be given to show what passed from the grantee.

13. Fraud consists in false representations of things as facts which are not such, or in deceitful concealment of existing facts.

14. To avoid a deed for fraud it must be because deceit was practised before or at its execution.

15. Where a defendant claimed under a deed to his predecessor containing covenants, and he had not sealed it, it is nevertheless admissible in evidence as the deed of the grantor.

October 28th 1867.   At Pittsburg, before THOMPSON, STRONG, READ and AGNEW, JJ.   WOODWARD, C. J., absent.

Error to the Court of Common Pleas of *Huntingdon county.*

This was an action of trespass *q. e. f.* to August Term 1864, brought by Michael J. Grove against Edward F. Hodges.

[Grove v. Hodges.]

Michael Garner was the owner of the *locus in quo* on the 16th of June 1855. On that day an instrument of writing was executed as follows:—

"Article of agreement made this 16th day of June, A. D. 1855, between Michael Garner, of Penn township, Huntingdon county, Pennsylvania, and William H. Irwin, of Lewistown, Pennsylvania, as follows: The said Michael Garner hereby sells to said Irwin, for the consideration of twenty-five cents per ton, the right to mine, take and carry away the iron-ore on and in the land owned by said Michael Garner, situated in Penn township, Huntingdon county, Pennsylvania, bounded by land of Philip Garner on the north, Samuel Hetrick on the south, Philip Garner on the east, mountain lands on the west, containing about forty acres, and Irwin agrees to pay said Michael Garner the sum of twenty-five cents for each ton of iron-ore mined on the lands of the said Michael Garner, and agrees to pay said M. Garner the sum of thirty dollars for each acre of the land of said Michael Garner which Irwin may destroy or dig up by his mining operations, and Irwin stipulates to commit no wanton waste or damage to the land of the said Michael Garner. This agreement to extend to the heirs and assigns of the parties. Witness the hands and seals of the parties.

Witness,                          MICHAEL GARNER, [L. S.]
    JACOB F. HOOVER.         WILLIAM IRWIN, [L. S.]
                                              By agent Miles McHugh.

State of Pennsylvania, }
    Huntingdon county,   } ss.

On the 21st day of June, A. D. 1855, personally appeared before me, a justice of the peace in and for said county, Jacob F. Hoover, who, being duly sworn according to law, saith that he saw Michael Garner and William H. Irwin by his agent, Miles H. Hugh, the within named parties, sign and seal the within indenture as their voluntary act and deed, and that the said Jacob F. Hoover subscribed his name at the same time as an attesting witness. Witness my hand and seal the day and year above written.

JOHN HOUSEHOLDER, J. P. [L. S.]"

This instrument was recorded in Huntingdon county July 17th 1855.

To January Term 1856 a judgment was recovered against Irwin for $501.40, and a fi. fa. was issued on it.

The sheriff returned: "Also by direction of plaintiff's attorney, I levy on all the following mentioned rights and interests of said defendant evidenced by the agreements and conveyances recorded in Huntingdon county, &c., * * to wit:—

"All defendant's interest and right to mine, take and carry

away the iron-ore on lands of Michael Garner, in Penn township, Huntingdon county, containing about 40 acres, bounded by lands of Philip Garner, Samuel Hetrick and Tussey Mountain lands."

To the venditioni afterwards issued the sheriff returned that he had sold:—

" All the defendant's right, title and interest to mine and take away the iron-ore on the following property, to wit: the iron-ore on land of Michael Garner, in Penn township, to Jacob Cresswell, for $35."

The deed to Cresswell was acknowledged August 19th 1857.

On the 1st day of December 1863 Garner, in consideration of $1, granted to Michael J. Grove, his heirs, executors, administrators and assigns, all the iron-ores in, upon and under that certain tract of land situate in Penn township, in the county of Huntingdon, &c., containing 48 acres more or less, adjoining lands of Philip Garner, &c., with the full and exclusive right, liberty and privilege of quarrying, mining, raising, searching, digging, delving, taking and carrying away said iron-ores, and also the right and privilege of good roads, free ingress, regress and egress and of convenient and sufficient room, on said premises, to mine, put and pile and keep the said iron-ores and the rubbish of the quarries and mines, and the earth, stones, refuse, timber, props, and every other material or refuse that may be removed or otherwise concern the quarries and mines or the quarrying, mining and removing of the said iron-ores; and also the right of way for railroads to connect with other railroads or wagon-roads, and also the right to sufficient room on the said premises to erect the necessary fixtures, houses, machinery, &c., to mine and raise said iron-ores, and pump the water of the quarries and mines, and run the same on said premises; and also the right to dig ditches to drain the same, or the grounds belonging thereto, as well as the right to all other acts concerning the mining, quarrying, working or removing, at any and all times hereafter, of the said iron-ores, on and from the said premises by the said Michael J. Grove, his heirs, servants, executors, administrators and assigns, contained in, upon and under the aforesaid certain tract of land, as fully as if he or they were the actual owners of the said premises described as above mentioned, to have and to hold all the said iron-ores in, upon and under the above-mentioned and described tract of land, and all the rights, liberties, privileges and easements in, upon, to, over, under or through the said tract of land and the hereditaments and premises hereby granted or mentioned and intended to be, unto the said Michael J. Grove, his heirs and assigns, to and for the only proper use and behoof of the said Michael J. Grove, his heirs and assigns for ever: In consideration whereof the said Michael J. Grove, his heirs, executors, administrators and assigns, covenant and agree with the

[Grove v. Hodges.]

said Michael Garner, his heirs, executors, administrators and assigns, that he, the said Michael J. Grove, his heirs and assigns, will, at the expiration of every three months, whenever the said iron-ores are mined or quarried on and removed from the said premises, render unto him, the said Michael Garner, his heirs, executors, administrators and assigns a true and correct account of all the iron-ores that are removed and taken away from said premises during such time, and thereupon pay him or them for the same the sum of 25 cents for each and every ton, &c.

This deed was recorded December 8th 1863.

Grove shortly after commenced to dig for ore on the premises, and has been mining there since.

On the 30th of March 1864 Creswell, the purchaser at sheriff's sale of the right of Irwin, sold and conveyed it to Edward F. Hodges; the deed was recorded in Huntingdon county on the next day. Shortly after this Hodges commenced mining near to where Grove was mining, and in the same vein: and hauled the ore away.

This was the trespass for which the suit was brought, and the question turned upon the effect of the "article" of Garner to Irwin. On the trial, before Taylor, P. J., the record of the agreement to Irwin was offered by the defendant, but objected to by the plaintiff, unless accompanied by proof of authority in McHugh to execute the article.

The objection was overruled, and an exception taken.

The defendant having given the evidence showing Irwin's title to be in Hodges, offered the deposition of McHugh, regularly taken in Illinois, on commission, to prove that McHugh was acting as agent for Irwin in making the agreement with Garner.

This was objected to by the plaintiff as not tending to prove authority in McHugh to "execute the agreement to Irwin and seal the same for him." The objection was overruled, and an exception taken.

In answer to one of the interrogatories, the witness said:—

"I have not the power of attorney, and do not know where it is. It was given me in April 1855, and I was to take charge of his business May 9th 1855. I was to open some coal drifts, and to act as his agent in mining and shipping of coal. I cannot say that this writing stipulated that I was to act as his agent in procuring ore leases specially, but I understood from it that I was to attend to his business generally, and as his general agent. This paper was written by Mr. Irwin, and was under his hand and seal. I cannot say that this paper gave me the authority to execute agreements for mining grants under seal. I do not recollect whether it did or not. I have made diligent search for this paper, but cannot find it."

Irwin testified for plaintiff that he thought he had not given

[Grove *v.* Hodges.]

to McHugh a power of attorney or any written authority (unless it were a letter) to make an ore-lease with Garner, or to sign his, Irwin's, name.

There was evidence for the plaintiff by Garner that when McHugh came to him about the agreement with Irwin he said that it would be an inducement to build a furnace or two; that McHugh said a furnace would be built in a year, or at most within two years; the points designated for the furnaces were Marklesburg and McConnelstown; that with this understanding Garner leased to Irwin.

There was no furnace put up, and Irwin never took any ore out. Money had been received by Garner from Hodges for taking out ore.

The plaintiff offered to prove that the Garner vein of ore, with others in the vicinity, had greatly increased in value by building the Broad Top Railroad since the date of Irwin's agreement. The evidence was rejected, and an exception taken.

The plaintiff asked the court to charge:—

1. That there was no evidence in this cause of any authority in Miles McHugh sufficient in law to enable him to execute for William H. Irwin the sealed agreement with Michael Garner, dated the 16th of June 1855, and therefore the said agreement was not binding upon either Michael Garner or William H. Irwin, and the said William H. Irwin did not acquire thereby any right to mine ore on the tract of land mentioned in the said agreement or any interest in the same.

2. That there is no evidence in this cause of any act or thing done by Michael Garner, William H. Irwin or Jacob Cresswell, prior to the date of the deed from Michael Garner to Michael J. Grove, which made the said agreement of 1855 binding upon Michael Garner in law or equity.

3. That the said agreement was void at law for want of authority under seal in Miles McHugh to bind Irwin by an instrument under seal, and could only acquire validity in equity by ratification or adoption by both Irwin and Garner, but that a chancellor would never afford his aid in giving it vitality after such laches and change of circumstances as characterize this case.

4. That under the evidence in this cause Michael Garner had, on the 1st day of December 1863, a perfect right in law and equity to convey to Michael J. Grove in fee simple, clear of all interest, rights or claims by or under the agreement of 1855, all the iron-ore in, upon or under the tract of land mentioned in the said agreement, and that his deed of that date, given in evidence, conveyed all the iron-ore to the said Michael J. Grove, in fee simple, clear of any right to mine or take away any of the said iron-ore in William H. Irwin, or any person claiming under him.

The points were all denied.

[Grove *v*. Hodges.]

The court, after stating the plaintiff's and defendant's titles, further charged:—

"It is answered on the part of the plaintiff that the agreement with Irwin is not valid and operative, so as to give the defendant any rights: 1, because defectively executed; 2, for the reason that it is merely an executory contract, and has remained unacted upon for such a period that it should not be regarded as valid or conferring any right; 3, that the Act of Assembly of 1856 applies to it, and that under the operation of that act it is void and inoperative.

"The only construction we can put upon the agreement with Irwin, in view of what is ruled in the Cambria Iron Company case is, that it was not a grant of the whole of the ore, but only a right to mine; not an exclusive, but a concurrent right. Irwin had a right to go and mine; but Garner, and, after his agreement with Grove, Grove, had also a right to go and mine. This is the construction warranted by the case cited. How, then, would the parties stand? It would follow that while Garner in 1863 conveyed by a deed fully sufficient for that purpose, all the ore, provided he then had it to convey, his grantee took it subject to the operation of the instrument on record—that is, a grant or license to Hodges to mine concurrently with him. This, assuming the contract with Irwin to be valid and operative. Let us inquire whether its effect and operation are destroyed for any of the reasons urged by the plaintiff.

"I. It is alleged to be defectively executed, and, for that reason, void. It is said that Irwin was not present; that McHugh had no authority under seal; no power or authority from Irwin to execute an agreement under seal; and that it is not, therefore, Irwin's deed, or binding upon him. Does this invalidate the instrument as the deed of Garner; or a grant or license to Irwin to mine ore at a stipulated price per ton? [It is true, and a well-understood rule of the law of agency, that where the agent has no power under seal, and undertakes to sign the name of his principal, and to add a seal, it is not the deed of his principal; and this instrument, it must be admitted, is not the deed of Irwin, but, with respect to him, defectively executed. But still, it is claimed by the defendant to be a grant by Garner, signed and sealed by him, and his deed; and that, since the only covenant on the part of the grantee is to pay 25 cents per ton for the ore mined, if Irwin accepted it, and he or any one claiming under him acted upon it, he would be liable in assumpsit for the ore mined according to its terms, and that the objection that it lacks mutuality is without force. We are of opinion that the view here urged by the defence is correct, and so instruct you; that this instrument is to be treated as the deed or grant of Garner to Irwin, if the latter accepted it, and treated and acted upon it as such.]

[Grove *v.* Hodges.]

" II. It is objected further, that it is a mere executory contract, and that a chancellor would not give effect to it, so as to enable these parties to take and enjoy rights under it.

" [We cannot regard it as an executory contract. It grants or conveys everything in contemplation of the parties as intended to be granted or conveyed. There is nothing to indicate that the contract was to be put in any other form. We think, therefore, that the cases cited on the subject of specific performance, do not apply. No decree is necessary to make it a grant; it is so by its terms.]

" III. [The other objection is, that this agreement, assumed to be executory in its character, comes within the statutory limitation. Assumed to be such, it would come within the terms of the Act of Assembly; but it is a grant or license and not, in our opinion, within its operation.]

" [Evidence was offered by the plaintiff to show that McHugh said, when the agreement was executed, or when negotiation was going on, that Irwin intended to put up a furnace in one or two years; and that Marklesburg or McConnellstown was designated as the point; and it is claimed further that because that was not done, this instrument is inoperative and invalid. We have been unable to come to the conclusion that this evidence is entitled to any force either in construing the instrument, or as evidence of fraud to be submitted to the jury.] There is no allegation of any misrepresentation as to any matter of fact. If there were any promises made which might be claimed to be conditions of the grant, we should find them in the instrument itself. Evidence of this character cannot be allowed the effect of changing it, or varying its terms.

" [Upon the whole we are of opinion that this paper, for anything urged to the contrary, is a valid license to Irwin, and Hodges, claiming under him, to enter and mine iron ore, if it was accepted and has been held and acted upon as such. We admit that there are cases which look towards limiting the operation of such grants, where, for any considerable time, nothing has been done in pursuance of them; but none which we think warrant us in declaring this instrument void upon that ground.]

" [We instruct you, then, that if you find that Irwin received and accepted and acted upon this instrument, claimed under and ratified it, the defence should prevail, and your verdict be for the defendant.] If, on the other hand, the evidence is not sufficient to satisfy you that Irwin did accept of and ratify it, the plaintiff would be entitled to recover, and it would be for you to assess the damages."

The verdict was for the defendant, and the plaintiff took a writ of error.

He assigned for error the ruling of the court on the evidence; the answers to his points and the portions of the charge in brackets.

[Grove v. Hodges.]

*J. W. Comly*, and *J. G. Miles*, for plaintiff in error.—The deed to Grove vested a fee simple in the *whole* of the iron-ore, in the land described, as a corporeal hereditament, *severed* in law from the soil in which it was imbedded, passing to the grantee an absolute estate in the ore, as a substratum, and leaving the remaining soil and estate in it, to the grantor: Caldwell *v.* Fulton, 7 Casey 484; Harlan *v.* The Lehigh Coal and Navigation Co., 11 Ibid. 287, 292; Tiley *v.* Moyers, 1 Ibid. 399. The smallest pecuniary consideration, or one of pecuniary value though ever so small, even a barleycorn or peppercorn in a deed of bargain and sale, is sufficient to raise a use. Jackson *v.* Alexander, 3 Johnson's Rep. 492; Moore *v.* Bickham, 4 Binn. 4; Okison *v.* Patterson, 1 W. & S. 395; Krider *v.* Lafferty, 1 Whart. 315, 316; Shep. Touch. 222; 2 Inst. 672; Fox's Case, 8 Rep. 186; Barker *v.* Keat, 1 Mod. 262, 2 Id. 249. Where a consideration is expressed there can be no averment to the contrary to affect the binding force of the deed: Wilt *v.* Franklin, 1 Binn. 218.

1. Irwin's agreement was void for defect of authority in the assumed agent, to bind his supposed principal. It was an agreement in relation to *land* purporting to be under the *seals* of the contracting parties. Irwin's name and seal are affixed by his assumed agent, Miles McHugh, who had no authority under seal to make the contract in Irwin's name: Bellas *v.* Hays, 5 S. & R. 437; Co. Lit. 48 b; Gordon *v.* Bulkley, 14 S. & R. 331, 332; McDowell *v.* Simpson, 3 Watts 137–8; Cooper *v.* Rankin, 5 Binn. 615–16. But to meet this difficulty the defendant relied upon an asserted ratification by Irwin, evidenced by no act, save the putting of the agreement on record, which was of little significance: Chess *v.* Chess, 1 Penna. 32; Blight *v.* Schenck, 10 Barr 289; Greenleaf's Ev. § 66; Blood *v.* Goodrich, 9 Wend. 68; 12 Ibid. 525, s. c. Story on Agency, § 252; Hays & Wick *v.* Linn, 7 Watts 525; Paley on Agency, 158–59, 18 Law Lib. 3.

The ratification could, by *adoption*, have made it the *written* lease of the lessor; it would have been good even under the Statute of Frauds and Perjuries. But whatever binding force was given to it by the alleged ratification, must be traced to a lower grade of contract: to a simple parol agreement on the part of the ratifying party. Is there any difference between the principle which governs here, and the principle of Vicary *v.* Moore, 2 Watts 451, that the alteration of a "written contract by parol makes it all parol"? If there be none, then, if Garner had joined in Irwin's ratification of McHugh's act, the agreement would have been of no higher grade than *parol* on both sides, and would have been within the prohibitions of the Statute of Frauds and Perjuries, having no greater "force and effect than a lease or estate at will only" would have had. But Garner, neither by word nor act,

ever assented to Irwin's ratification. The obligation then on Irwin would rest on simple contract; on a parol agreement, whilst Garner, if bound, would be bound by an agreement under seal or by deed, in a case where both parties, upon the face of the instrument, were to be bound by obligations of the same grade. Here is the absence of mutuality of obligation which the instrument contemplated.

2. The agreement then being invalid as to Irwin, it was not binding upon Garner. There must be mutuality in a contract to render it binding: Staines *v*. Wainwright, 8 Scott 280; 6 Bing. N. C. 174; Harrison's Dig. tit. *Contract, Mutuality;* Lees *v*. Whitcomb, 5 Bing. 34; M. & P. 86; 3 C. & P. 289; Frontin *v*. Small, 2 Ld. Raym. 1418; Fisher *v*. Cuthell, 5 East's Rep. 497–8; Paley on Agency, 344, 345, 18th Law Lib.

If the act done, be intended to raise a duty in a third person, so as to subject him to damages for the non-performances of that duty, an unauthorized proceeding cannot be brought to have that effect by a subsequent sanction: Garrett *v*. Gonter, 6 Wright 143; Greenl. Ev., § 264.

3. The agreement being void at law, it could only acquire validity in equity by subsequent ratification by both Irwin and Garner: Pollard *v*. Shaaffer, 1 Dall. 212; 1 Fonb. Eq. 37.

Now the instrument set up by the defendant has been shown to be void at law, and in a court governed by "strict rules of law" must be so adjudged. Where then is relief to be had by the party attempting to enforce it but in a court of equity, or in a court where chancery rules are applied? If the *confirmation* was of any value, it must be made so, not in a *court of law*, but in a court of *equity*, or in a court where an action might be entertained based upon *equitable* principles.

4. Would a chancellor ever enforce the agreement under the facts proved and offered to be proved? Irwin was bound to exercise the rights granted to him within a reasonable time, as no consideration was paid for what his alienee now claims to have been vested in him. If he was bound to no *duty* and might exercise his *rights* at his own will and pleasure the contract would be unreasonable, and without any mutuality or reciprocity of benefit: Bodine *v*. Glading, 9 Harris 53, citing 1 Sch. & Lef.; 18 Com. Dig. 411; Newl. on Cont. 153; Watson *v*. O'Hern, 6 Watts 362; Sharp *v*. Wright, 28 Beav. 150; Rogers on Mines, Minerals and Quarries 289, 376, 377; Rogers *v*. Brenton, 10 Q. B. 64; McBride *v*. Weeks, 22 Beav. 533.

In contracts for the lease of working mines, *time*, though not named, is from the fluctuating nature of the property, considered as of the essence of the contract, and the intended lessee may therefore fix a reasonable time for completion, and on the lessor's

[Grove v. Hodges.]

default may rescind the contract: 2 Powell on Cont. 161; Bellas & Hays, *supra*; Gibson v. Patterson, 1 Atk. 12; Peebles v. Reading, 8 S. & R. 493; Dalzell v. Crawford, 1 Pars. 37; 1 Sugden 501; Patterson v. Martz, 8 Watts 379, 380; Tiernan v. Roland, 3 Harris 438; Taylor v. Longworth, 14 Pet. 174; Milward v. Earl Thanet, 5 Ves. 720.

But the agreement was procured by misrepresentations and false inducements, in regard to the erection of furnaces: Paley on Agency 256, 18 Law Lib.; Cadman v. Horner, 18 Ves. 10, note 1; Sugden's Vendors 190, 191; Hornett v. Yielding, 2 Sch. & Lef. 553.

5. Having been procured by misrepresentation and false inducements as before shown, the agreement was void, *ab initio*, on the ground of fraud: Cochran v. Cummings, 4 Dall. 250; Gilbert v. Hoffman, 2 Watts 66; Lowry v. Pinson, 2 Bailey 324; 2 U. S. Dig. 449; Story's Eq. Jur. §§ 186, 192; Christ v. Diffenbach, 1 S. & R. 465; Hill v. Ely, 5 Id. 366; Clement v. Youngman, 4 Wright 346; Youngman v. Linn, 2 P. F. Smith 413; Harlan v. The Lehigh Nav. and Coal Co., 11 Casey 287; Beaupland v. McKeen, 4 Id. 130.

6. Irwin & Garner's agreement, at best, was but an executory contract, which equity will not enforce under the facts proved and offered to be proved. If an executed contract or conveyance of an incorporeal hereditament can only be regarded as a deed of bargain and sale, its language is applicable only to that species of conveyance, and it is void for want of a pecuniary or valuable consideration expressed: Moore v. Bickham & West, 4 Binn. 3, 4; Jackson v. Sebring, 16 Johns. 515; Jackson v. Florence, 16 Id. 47; Jackson v. Delancy, 4 Cowan 427; Jackson v. Caldwell, 1 Id. 623; Jackson v. Pike, 9 Cowan 69.

But the construction claimed for the defendant is not sound, and the agreement was to every intent executory. He invaded the rights of the plaintiff who was in possession of the ore vein, and gained whatever possession he had by trespass and wrong. A Court of Chancery would restrain him by injunction: 2 Story's Eq. Jur. § 929; Thomas v. Oakley, 18 Ves. 184; Livingston v. Livingston, 6 Johns. C. R. 497; Field v. Beaumont, 1 Swanst. 208; Smith v. Collyer, 8 Ves. 90; Mitchell v. Dors, 6 Id. 147; Hanson v. Gardiner, 7 Id. 305, 311, note 1; Courthope v. Mapplesden, 10 Id. 291; 2 Story's Eq. §§ 695, 696, 697, 698; 2 Bl. Com. 443; 2 Inst. 513; Stouffer v. Coleman, 1 Yeates 393; Jackson v. Myers, 3 Johns. 388; Jackson v. Clark, Id. 424; 2 Bl. Com. 317; Co. Litt. 9, 172; Morgan v. Bissell, 3 Taunt. 71; Campbell v. Sproat, cited by the counsel in Stauffer v. Coleman, 1 Yeates 394, 395, 397; Neave v. Jenkins, 2 Id. 108; Sherman v. Dill, 4 Id. 298; Williams v. Bentley, 3 Casey 294; Maus v.

5 P. F. SMITH—33

Montgomery, 11 S. & R. 329 ; Dawson *v.* McGill, 4 Whart. 230 ; Stokely *v.* Trout, 3 Watts 164 ; Bear *v.* Whisler, 7 Ibid. 150.

7. If it ever had any validity it was barred by the Act of Limitations of the 22d April 1856, § 6, Purd. 654, pl. 13, Pamph. L. 533 : Price on Limitations 156 ; Peebles *v.* Reading, 8 S. & R. 493 ; Price on Liens 156–7 ; Halsey *v.* Tate, 2 P. F. Smith 314 ; Randall *v.* Van Vechton, 19 Johns. 64 ; Weyman *v.* Hallowell, 14 Mass. 58 ; Salem Bank *v.* Gloucester Bank, 17 Id. 29 ; Cooper *v.* Lampeter, 8 Watts 128.

*John Scott* (with whom was *R. B. Petriken*), for defendant in error.—The argument and authorities for the plaintiff in error would be pertinent if this were an action of covenant founded upon this agreement as Irwin's deed. It may not be his deed, but it is not for that reason void at law. The reason why counsel deem it " void at law" seems to be that the evidence of ratification is insufficient, an argument which impliedly admits that it is at most but voidable, and not void : Bellas *v.* Hays, 5 S. & R. 438. If mutuality of remedy had been essential, the precedent authority given by Irwin to McHugh to procure leases, and his subsequent acceptance and adoption of them as " signed for him," would enable Garner to maintain covenant against Irwin : Garnet *v.* Gonter, 6 Wright 143 ; McFarson's Appeal, 1 Jones 503 ; Maule *v.* Weaver, 7 Barr 330 ; Dubbs *v.* Finley, 2 Id. 397 ; Corson *v.* Mulvany, 13 Wright 98 ; School Directors *v.* McBride, 10 Harris 215 ; Poor Directors *v.* McFadden, 1 Grant 230 ; Pratt *v.* Harding, 6 Casey 525.

2. The deed was a valid grant by Garner, sufficient to take it out of the Statute of Frauds : Lowry *v.* Mehaffy, 10 Watts 387. It is sufficient if signed by the party to be charged : Wilson *v.* Clarke, 1 W. & S. 557 ; Simpson *v.* Breckenridge, 8 Casey 287 ; 2 Greenl. on Ev. § 61–66 ; 1 Grant's Cases 58 ; Hawkins *v.* Holmes, 1 P. Wms. 770.

3 and 4. If the grant by Garner was a valid one, and he had a remedy against Irwin, how can the equity powers of the court be invoked in this case by either party ? The plaintiff sues, and the defendant defends, upon his legal title : Johnstown Iron Company *v.* Cambria Iron Company, 8 Casey 241. The distinction between the effect of the payment of the consideration of the deed at the time, and the agreement to pay by the ton when the coal, ore, &c., shall be taken, is well settled. But when the nominal consideration of $1 is introduced, although actually paid, it is so strong an index of the intent of the parties, that it is submitted the payment of that sum by Grove places his rights in no stronger light than those of the defendant, who has actually paid a much larger present consideration to the vendee of Irwin's rights :

[Grove v. Hodges.]

Funk v. Haldeman, 3 P. F. Smith 229 ; Chetham v. William-
son, 4 East 469 ; Grubb v. Bayard, 2 Wall. Jr. 91 ; Grubb v.
Gilford, 4 Watts 224.

5. There was no misrepresentation of fact: Caldwell v. Ful-
ton, 7 Casey 482 ; Stine v. Sherk, 1 W. & S. 195.

The deposition of McHugh itself showed the authority under
which McHugh acted in taking the lease. He was competent to
prove it, and the authority proved was sufficient to bind Irwin in
assumpsit: Miles v. Cook, 1 Grant 58 ; McDowell v. Simpson, 3
Watts 129 ; 2 Greenl. Ev. § 61.

The opinion of the court was delivered, January 7th 1867, by

STRONG, J.—Of the deed from Garner to Grove, it is needless
to say more than that it was a conveyance of a corporeal
hereditament, and that it passed, in fee simple, the entire owner-
ship of the iron-ore in the land described, if such an estate
was in the grantor when the deed was made. This is not to be
doubted with Caldwell v. Fulton before us. But Garner had made
a grant to Irwin before his deed to Grove, not, indeed, as we
think, a grant of a corporeal interest, but a grant of a right to
take ore from the land. This grant was recorded before the con-
veyance to Grove, and the defendant claims under it. If it is to
be treated as a valid and subsisting grant, it justifies the act of
the defendant of which the plaintiff complains. But the plaintiff
assails its validity on several grounds. The first is, that it was
void at law, as an act of Irwin, because it was not signed and
sealed by him, or by his agent duly authorized, and being void as
to him it was void also as an act of Garner, for want of mutuality.
The instrument, upon its face, declares that Garner thereby sells
to Irwin the right described, to wit, the right to mine and take
ore from the land for the consideration of twenty-five cents per
ton agreed to be paid by Irwin, and it is signed and sealed by
Garner. It is also signed and sealed "William Irwin [L. S.] by
agent, Miles McHugh." No sealed authority is shown, however,
for McHugh's action, nor is Irwin shown to have adopted the seal
which was affixed, or to have ratified the sealing by any sealed
instrument, though there is evidence that he accepted the contract
as made. It must be taken, therefore, that the deed is not a deed
of Irwin. None of the covenants which it contains are his cove-
nants. Yet it does not necessarily follow from this that the con-
tract between the parties to it was not mutual. If Irwin accepted
the grant, he accepted it with its expressed conditions, and the
contract became binding upon him to precisely the same extent,
as it would have been binding if he had personally signed and
sealed the instrument. The mode of enforcing his obligations is
different, but the duty is the same. It is assuredly plain law that

[Grove *v.* Hodges.]

if a party, who has not put his name to a written contract, accepts it when signed by the other party, it binds him the same as if he had signed it.   Even mutual executory agreements are held binding upon both parties, though one may have signed and sealed, and the other signed but not sealed, though the agreements contain the words "witness the hands and seals of the parties," thus manifesting an intention that both should seal.   The legal principle that contracts must be mutual, that they must bind both parties or neither, does not then mean that in every case each party must have the same remedy for a breach by the other.   Covenant may lie against one, when only assumpsit can be maintained against the other.   Nor does the principle mean that when a contract is written each party must sign it.   The engagement of one may be in writing, and that of the other rest in parol, even when the contract is wholly executory.   It is true that when a contract consists of mutual promises, both parties must be bound, or neither is ; but in no case, when the consideration is a covenant or a promise, is the form of the undertaking material.   It is its substance.   If then there were no other considerations, it would be impossible to hold that Garner was not bound by his grant to Irwin, because the contract was not mutual.   McHugh was authorized to procure leases for Irwin, though not authorized to seal them.   He procured this from Garner, and Irwin accepted it, had it put upon record by his direction or with his sanction, and thus he became liable to perform all that the instrument stipulated he should.   Under these circumstances it cannot be said there was no mutuality in the contract.

But there is another view of the case which relieves it from all difficulty on this point.   Want of mutuality is no defence to either party, except in cases of executory contracts.   It has no applicability to an executed bargain.   There are many where the obligation is all upon one party.   As to one, the obligation was fulfilled, the contract was executed when it was made.   As to the other party it remains executory.   A consideration may be either something done, or something to be done, or a promise itself.   When it is something already done, it is idle to talk of want of mutuality.   That is to be considered only when the obligations of both parties are future.   Such was the case of Bellas *v.* Hays, 5 S. & R. 427, so much pressed upon our attention in the argument.   The agreement was wholly executory, upon both sides.

Mutuality of obligation is considered, perhaps, more frequently in courts of equity than in those of law.   In bills to enforce the specific performance of contracts, which of course have to do with executory agreements, it is a constant inquiry what equities the defendant has against the complainant and a chancellor will not enforce specifically a contract that is one-sided.   But he will

[Grove *v.* Hodges.]

interfere at the suit of a complainant who discharged his part of the contract, before the undertaking of the defendant was made, or contemporaneously therewith. Unquestionably, if a deed be made to a married woman, or to an infant, and a note be taken for the purchase-money, the deed is not void though the note be irrecoverable. It will be no answer to a demand for the subject of the deed to say that the contract was not mutually obligatory. That would do, if the contract was executory upon both sides, for then equity might interfere. But neither courts of law nor of equity interfere with executed contracts. They may be undone for fraud, but not for want of mutuality. Much less are they annulled because the consideration may prove to be not formally what was expected, though substantially the same.

It needs but a reading of the instrument to show that the contract between Garner and Irwin was an executed one, on the part of Garner. It is an immediate conveyance of the right to mine, take and carry away the iron-ore on and in the land of Garner for a consideration mentioned. It is not an agreement for a future conveyance. Garner sells in words *de præsenti*. He has nothing more to do. He undertakes nothing more. He signs and seals the instrument as evidence of what he had done, not of what he had to do. In the strictest sense, therefore, the contract was executed as to him, and the subject of the grant passed out of him the instant he signed the deed, and it was accepted by Irwin. The grant was not, then, void for want of mutuality in the contract.

It is next objected that the agreement being void at law, it could only acquire validity in equity, through subsequent ratification by both Garner and Irwin, and that a chancellor would not enforce it under the circumstances of the case. We are not prepared to admit that an instrument executed in the name of one of the contracting parties, but without any authority in the agent who executed it, is good only in equity, if it be duly and formally ratified by the party, whose name was put to it without authority. But it is unnecessary to discuss this question, for we have shown that Garner's grant was not void at law, if it was accepted by Irwin, and that it was accepted the verdict establishes. The rights of the parties are rights at law, and not within the cognisance of a court of equity. If Irwin had ratified the contract by a sealed instrument it would have become his deed, and he would have been answerable for a breach of its covenants in an action of covenant. If he did ratify it by parol, if he accepted it, claiming rights under it, though it is not his deed, it is his contract and he is answerable for failure to comply with its obligations in an action on the case. Neither he nor Garner has any need of the aid of a chancellor.

Again it is objected that if the agreement was not void it was

executory, and such as a court of equity would not enforce under the circumstances of this case, or that if it was an executed contract, it was a deed of bargain and sale, and void for want of a pecuniary or valuable consideration expressed. We have already said that, in our opinion, the contract was an executed one so far as to convey the right to mine and take away iron-ore. And if executed it is of no importance whether it is to be regarded a deed of bargain and sale or not. The consideration of such a deed must truly be a valuable one, but it need not be expressed in the instrument, if a consideration be averred : Fisher *v.* Smith, Mood. 569 ; Jackson *v.* Alexander, 3 Johns. 484. It has even been held that when no consideration is expressed parol evidence may be given to show that one passed from the grantee to the grantor : White *v.* Weeks, 1 Pa. R. 486. However this may be, it was resolved in Wykes *v.* Tillard, Cro. Eliz. 595, after the Statute of Uses, that the reservation of a rent on a bargain and sale would be considered a sufficient consideration to raise a use to the bargainee. Apply now these principles to the present case. The grant from Garner to Irwin expresses a valuable consideration. It is 25 cents per ton of ore mined, to be paid by the grantee. The obligation assumed to pay this is the consideration. Jackson *v.* Florence, 16 Johns. 47, cited on behalf of the plaintiff, was a case of bargain and sale on condition that the grantee should support the grantor. Even in that case it was intimated that the deed would have been good had there been any agreement, outside of the deed, that the bargainee should furnish the support. But in this state, where the acceptance of a grant subject to burdens implies a promise to discharge the duties described, it cannot be said that such a deed delivered and accepted is without a valuable consideration. We say so much on the assumption that the grant from Garner to Irwin is a bargain and sale. If it may be treated as a lease, the law raises a consideration out of the tenure itself.

Another objection urged against the validity of Garner's grant is, that it is barred by the limitation of the 6th section of the Act of April 22d 1856. But that section applies exclusively to cases of a character entirely different from the present. It declares that " no right of entry shall accrue, or action be maintained for a specific performance of any contract for the sale of any real estate  *  *  or to enforce any equity of redemption after re-entry made for any condition broken, or to enforce any implied or resulting trust as to realty but within five ·years," &c.   If Garner's deed is a grant executed, as we think, and not a mere agreement to make a grant, it is not within the operation of this act.

It is further contended that the court below erred in that part of the charge in which the following language was used : " Evi-

[Grove v. Hodges.]

dence was offered by the plaintiff to show that McHugh said, when the agreement was executed, or when negotiation was going on, that Irwin intended to put up a furnace in one or two years; and that Marklesburg or McConnellstown was designated as the point; and it is claimed further that because that was not done this instrument is inoperative and invalid. We have been unable to come to the conclusion that this evidence is entitled to any force, either in construing the instrument or, as evidence of fraud to be submitted to the jury." It would be going very far to hold that a man may be relieved from his deed by proof that when it was made promises were held out to him that were not performed, and that is the utmost that was exhibited in this case. Fraud, it is true, avoids all contracts, but fraud consists in false representations of things as facts which are not such, or in deceitful concealment of existing facts, neither of which is found in the evidence. The conveyance was not upon condition that furnaces should be built. If void, then it must be because deceit was practised before it was made or at the time of its execution. But a promise is not, in itself, a false and deceitful representation. Performance may have been intended when the promise was made. If so, there was no wrong done when the title passed out of the grantor, and certainly a failure to perform the promise cannot revest a title after it has been divested. We agree with the learned judge of the Common Pleas that there was nothing in the evidence either to affect the construction of the contract, or from which the jury could find fraud to avoid it.

This is all that need be said respecting the errors assigned to the charge and to the answers to the plaintiff's points. None of them are sustained. There remain four bills of exception to the admission and rejection of evidence. The first is, that the court erred in admitting in evidence the record of the agreement between Garner and Irwin, without accompanying evidence of authority in McHugh to execute it in the name of Irwin. If we are correct in what we have said, this averment of error fails. We have thus far treated the instrument as not being the deed of Irwin. Yet it was Garner's deed, and as such admissible. The question was thus ruled in Bellas v. Hays, above referred to.

The second bill of exceptions, probably, became immaterial under the ruling of the court. But if not, in view of the fact that the action was trespass *quare clausum fregit*, it is manifest that the evidence offered and received tended directly to reduce the damages and to show that the injury to the plaintiff, if any, was small.

The deposition of McHugh tended to prove the existence of sealed authority in him to seal the deed for Irwin. It is true this authority was afterwards disproved, and the court put the

[Grove *v.* Hodges.]

case to the jury as if there was none. The plaintiff was, therefore, not harmed by the admission of the deposition.

As to the remaining bill of exceptions, it is enough to say that we are unable to discover what legitimate bearing the evidence offered by the plaintiff and rejected could have upon any question in the case. Irwin had accepted Garner's deed long before the railroad was built, and before the mines were opened, and his title had been sold at sheriff's sale in the presence of Garner, without objection, before the plaintiff's right accrued.

The judgment is affirmed.