MOLLIE GIBSON LENOIR, BY CHARLES O. LENOIR, HER NEXT FRIEND AND HUSBAND, *Appellant,* v. CODY D. MC-DANIEL, *Appellee.*

Opinion Filed October 8, 1920.

1. In a case where a contract containing mutual covenants is not enforceable as against one of the parties by reason of some disability, yet such party performs all the obligations on his part to be performed, the objection of lack of mutuality does not lie.

2. A married woman by reason of her coverture may not make a valid contract of co-partnership, yet she may invest her money or labor in a mercantile business and acquire an interest therein.

3. The exercise of equity jurisdiction for the specific performance of contracts for the purchase of property does not proceed upon any distinction between real estate and personal estate, but depends on the question whether damages at law may not in the particular case afford a complete remedy.

An Appeal from the Circuit Court for Duval County; George Couper Gibbs, Judge.

Order reversed.

*Baker & Baker* and *Wm. T. Stockton,* for Appellant;

*Marks, Marks & Holt,* for Appellee.

ELLIS, J.—This is an appeal from an interlocutory order sustaining a demurrer to a bill exhibited by Mollie Gibson LeNoir by her next friend and husband Charles O. LeNoir against Cody D. McDaniel. The bill prays for relief as follows: First, that an account be taken of the assets, earnings and property of the business known as the McDaniel Art Shop carried on at 25 West Forsyth Street in Jacksonville, Florida; second, that complainant be declared to be the owner of a one-half interest in the assets, and that the same is her separate property acquired by her as her earnings in an employment; third, that the defendant be required to assign, convey and deed to her a one-half interest in the assets; fourth, that he be required to account to the plaintiff for all monies, bonds, property, stock of goods, fixtures and every description of assets acquired by him in the said business; fifth, that he be enjoined from selling and disposing of the business or removing any of the stock from the premises; sixth, that a receiver be appointed to keep and preserve the assets and carry on the business pending the suit; seventh, that the business be wound up and the "partnership, if any, be declared dissolved," etc.; eighth, and for general relief.

The bill alleged in substance that the complainant is a married woman and over twenty-one years of age, that on April 1st, 1918, the defendant owned the mercantile business conducted at 25 West Forsyth Street in the City

of Jacksonville known as the McDaniel Art Shop. The character of business is the sale of photographic outfits and supplies, "kodaks" and cameras and accessories used by photographers, development of films of pictures taken by owners of cameras and kodaks, selling stationery, leather goods, pictures, etc.; that in April, 1918, the business was not "making money," was in debt, and the "liquid assets if sold were not sufficient to meet its liabilities." The stock of goods had run down and debts had accumulated amounting to about $4,118.41 in open account and "bills payable," and the value of the stock did not exceed $2,500.00. That defendant had no expense in conducting the business he had acquired. That complainant was experienced in such business, and in April, 1918, was keeping books for the business and devoting part of her time to the business. The defendant required her services as manager and buyer for the business which she agreed to and did give. That subsequently he required her to give her entire time and services to the business, which on August 1st, 1918, at his request she did, taking charge of, managing and conducting the business.

The sixth paragraph of the bill is as follows:

"That as an inducement to your oratrix to take charge and manage said business, the defendant promised and agreed to pay her Twenty Dollars ($20.00) each week as salary, to be charged as an expense of the business, and in the event and as soon as the business had earned Eight Thousand ($8,000.00) Dollars to assign to her a one-half interest in the business and in its assets. That subsequent to April 1st, 1918, at the request of your oratrix, the defendant gave her a paper writing containing such agreement, a copy of which is hereto attached as Exhibit 'A' and made a part of this bill. But your oratrix fur-

ther avers that the agreement contained in said paper writing was made to her prior to said August 1st, when she gave up all other employment and took charge of the management of said business."

The Exhibit "A" is as follows:

"McDANIEL ART SHOP
25 West Forsyth Street,
Jacksonville, Fla., Sept. 21st, 1918.

Mrs. Chas. O. LeNoir,
City.
Dear Madam:

I herewith make you the following offer in regard to an interest in the McDaniel Art Shop: If you will arrange to give your time and attention to same faithfully and regularly I will pay you the sum of $20 per week as salary, and if you will assist me in every possible way in regard to the management of the business, in consideration of your years of experience in this line of work, I will agree that when our books show that The McDaniel Art Shop shall have earned the sum of $8,000 net, I will deed over to you a one-half interest in the business without any payment on your part, considering that you have helped in the work sufficiently to equal the payment in cash.

"It shall be understood, however, that if you do not remain in the business until the firm has netted the sum of $8,000 that you will have no interest in the firm whatever and will be entitled only to your salary.

"Should I sell my interest in the firm at any time before the agreed amount has been made that this agree-

ment shall be binding upon my successor, so that you may depend upon the reward for your faithful assistance.

"Yours very truly,

"C. D. McDANIEL."

That complainant diligently kept and discharged every obligation incumbent upon her by reason of her "employment and necessary to accomplish the conditions of said agreement." That her efforts have been successful, the business has made "handsome profits," all debts have been paid except a small note given to discount bills. That the business has cash on deposit in the bank, owns real estate, Liberty bonds, has a large stock of goods and excellent fixtures. The stock of goods is worth $6,000.00. The value of the entire assets of the business exceeds $15,000.00. That since January 1st, 1919, the defendant has charged off the following items: "Riverview Lots formerly on books at $796.82; overdrafts by defendant of $945.55, and $1,000.00 to the furniture and fixtures account. Defendant charged the business $35.00 a week for his own services and on January 1st, 1919, owed the business $945.55 in addition to the amount of his salary. That the said $945.55 was an asset of the business; that the defendant charged himself with $400.00 for an auto owned by the business which he has traded for a lot in Riverside worth $1,000.00," etc. That the defendant has recently placed in the business as employee a younger brother. The defendant intends to dispose of the business, will not assign to complainant a half interest as he agreed to do, has denied that she has any interest or has any right to an accounting, that in May, 1919, he notified the complainant that he "would not permit her to remain connected with or continue as an employee in the business unless and except she shall surrender the agree-

ment." That the defendant dismissed her and prevented her from obtaining the benefit of the agreement; that she was at all times ready, willing and able to perform her part of the agreement and would have done so if she had not been discharged by defendant.

The defendant demurred to paragraph six of the bill upon the grounds that the complainant being a married woman the agreement mentioned was void, that it can afford no valid basis to complainant for the recovery and relief sought. This demurrer was overruled. There was a general demurrer to the bill upon the grounds that the complainant is not entitled to an assignment of an interest in the business; the allegation of present value of the business is a "conclusion unsupported by any allegation of fact;" an accounting is unnecessary because complainant is fully advised of the earnings, assets and liabilities; she has an adequate remedy at law; that the contract is invalid because she is a married woman; the bill is "predicated upon an invalid agreement of copartnership and for an accounting and recovery of profits thereunder," and the agreement which is the basis of the case is void. The demurrer was sustained, the chancellor assigning as his reason for the ruling that an accounting is unnecessary because the "complainant was and admittedly is fully advised of the earnings of said business and its assets and liabilities," and if she has any enforcible rights she has a plain, adequate and complete remedy at law. The appeal was from this order.

Exhibit "A" of the bill was a definite proposition made by the defendant to the complainant to pay her twenty dollars per week as salary, and to "deed over" to her a "half interest in the business without any payment on her part" when the books (of the business) showed that

the McDaniel Art Shop shall have earned the sum of eight thousand dollars net. The proposition was upon condition that the complainant would assist the defendant "in every possible way in regard to the management of the business," and arrange to give her time and attention to the business faithfully and regularly. According to the proposition the defendant considered that if she performed the work required and the business earned eight thousand dollars net, she would have "helped in the work sufficiently to equal the payment in cash." It was stipulated that if she did not remain in the business until the "firm" had netted the sum of $8,000.00 that she should have no interest in the "firm" whatever and would be entitled only to her salary. The proposition was accepted by complainant, she immediately began work, discharged her part of the obligation and remained with the business, giving it her time and attention faithfully and regularly until the books showed it had earned $8,000.00 net. Having rendered the service she agreed to render the contract was executed on her part and the obligation of lack of mutuality does not obtain. When the contract was made equity would not have enforced it specifically because of the doctrine of mutuality, the contract required of the complainant services of a confidential and personal nature and it may be equity would not have enforced it at the instance of the defendant. But the services having been rendered the rule does not apply. See 25 R. C. L., p. 232. Even in cases where a contract containing mutual covenants is not enforceable as against one of the parties by reason of her coverture and the party assuming to contract with her is not in equity obliged to perform such contract on his part, yet when the party under disability performs all her obligations under the agreement, equity may compel specific

performance on the part of the other. · Sec. 25 R. C. L.; p. 234; Dickson v. Stewart, 71 Neb. 424, 98 N. W. Rep. 1085; Yerkes v. Richards, 153 Pa. St. 646, 26 Atl. Rep. 221; Newman v. French, 138 Iowa 482, 116 N. W. Rep. 468, 128 Am. St. Rep. 212, 18 L. R. A. (N. S.) 218; Asberry v. Mitchell, 121 Va. 276, 93 S. E. Rep. 638. But it is insisted by defendant that the agreement was void *ab initio*. That is the last ground of his general demurrer, and as if by way of explanation as to why the agreement was void *ab initio* it is pointed out in other grounds of the demurrer that the agreement was a co-partnership agreement and as a married woman cannot enter into a co-partnership agreement, cannot become a member of a partnership, it is argued in the brief of appellee that the agreement was void, and therefore there is no agreement to be specifically enforced. It is true that a married woman by reason of her disability of coverture cannot make a valid contract of co-partnership, but she may acquire an interest in a mercantile business, she may invest money or other property in such business and such interest will be her separate property and subject to be charged in equity and sold under Section 2 of Article XI of the Constitution. See Nadel v. Weber Bros. Shoe Co., 70 Fla. 218, 70 South. Rep. 20.

The proposition of the defendant, McDaniel, was not that he would agree to become associated with her as a co-partner, not that he would establish such relation with her, but that he "would deed over" to her "a one-half interest in the business." There was no impediment whatsoever in the way of the acquisition by her of an interest in the business. She could have acquired it by gift or purchase, she could have bought the interest with money or other property. In the case at bar she undertook to acquire the interest by personal serv-

ice, she gave not only labor, time and attention, but she brought to the business her experience and ability, and, according to the bill, she rescued the business from failure, she placed it upon a sound financial basis, she displaced its liabilities with assets, she enabled the business to charge off several accounts which were carried as assets and pay off overdraughts of nearly $1,000.00; she enabled the defendant to pay himself a salary of $35.00 per week out of the earnings, who prior to her management had practically wrecked the enterprise; in other words, she accomplished by her services all that the defendant believed she could accomplish and for which he was willing to pay her a half interest in the business. Now, was it lawful for her to do this. Could she acquire the interest by paying therefor her personal labor If she could, will equity construe the agreement to be one to accomplish what she might lawfully acquire or construe it as an effort to do that which the law forbids? She could not enter into co-partnership relations with the defendant, but she could acquire an interest in his business. There is no difficulty in the question as to the method of payment. Her services were rendered and defendant accepted them and profited thereby. It does not lie in his mouth now to object. Even if he should say that her husband is entitled to the fruits of her labor, he has brought the suit for her as her husband, in her name, and thereby ratified and sanctioned her claim. The defendant cannot question the contract's validity now that she has performed her part of it, upon the ground that she could not agree to render services to the benefits of which her husband was entitled. That point, if there is anything to it, is for her husband to raise. And Section 2593 of the General Statutes of Florida, 1906, would seem to settle that against him. It provides that

a married woman's wages and earnings acquired by her in any employment separate from her husband shall be her separate property and subject to her own disposal and she shall be entitled to sue for and recover the same as though she were a single woman. This court has held that the husband's custody and management of the wife's property under the statute continues only so long as the arrangement is agreeable to her. See Florida Citrus Exch. v. Grisham, 65 Fla. 46, 61 South. Rep. 123.

Now the earnings acquired by the complainant under her agreement is a half interest in the McDaniel Art Shop business, which according to the allegations of the bill admitted by the demurrer consists of assets both real and personal. The business in which she was to hold a half interest by deed from the defendant, is one the value of which depends not only upon the actual cash value of the personal property and real property owned by it, but upon many other conditions, such as location, good will, established trade, reputation, managerial qualities, etc. If the allegations of the bill are true the last mentioned element of value is not the least important. By her experience, skill and ability she seems to have accomplished results extraordinarily profitable. It was in a business rejuvenated by her remarkable profit getting abilities that she became and was entitled to a half interest. No adequate remedy at law is afforded her for the defendant's breach of the contract. What would be the measure of her damage? The shelf value of the merchandise, the depreciated value of the accounts or bills receivable which under her management might be worth par? The contract was not for a certain interest in merchandise, but an interest in a business to which her personal service gave a peculiar value and character. Under such cir-

cumstances equity will compel specific performance. The case is analogous to that of a purchaser of stock in a corporation when his control or his ability to prevent control by antagonistic interests gives the stock a peculiar value. See Bumbardner v. Leavitt, 35 West Va. 194, 13 S. E. Rep. 67; Hubbard v. George, 81 West Va. 538, 94 S. E. Rep. 974, L. R. A. 1918-C, 835.

The exercise of equity jurisdiction for the specific performance of contracts for the purchase of property does not proceed upon any distinction between real estate and personal estate, but dependant on the question whether damages at law may not in the particular case afford a complete remedy. See 25 R. C. L. p. 294.

In the case at bar the complainant remained in the service of defendant until he discharged her and repudiated the contract. Her services had produced the result contemplated, the contract was in writing, answered the requirements of the statute of frauds and was for an interest in a business rendered of peculiar value by her personal management. His breach of the contract entitles her to its specific performance. The accounting is merely ancillary to compel relief. The case is in nowise analogous to or controlled by Mills v. Joiner, 20 Fla. 479.

The allegations of the bill are not perfectly clear in one particular, and that is as to the books of the business showing that it had "earned the sum of $8,000.00 net." From different allegations, however, it may be legitimately inferred that such is the case. It is alleged that when complainant took charge under the agreement the business owed about $4,118.00 on "open accounts" and "bills payable." That now "every debt, bill and bill payable has been paid except a small note given to raise

money to discount bills has not been paid." That the value of the stock of goods is $6,000.00, and the value of the entire assets of the business exceeds $15,000.00.. It is not reasonable to infer even against the pleader that the small note given to raise money to "discount" bills exceeds in amount the value of the stock of merchandise. But if it equaled it there would be left a value of $9,000.00 net.

The order of the Court is reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.