**PINCKNEY et ux. v. MORTON et al.**

Circuit Court of Appeals, Fifth Circuit.
March 8, 1929.

No. 5306.

R. C. Brown, of Tampa, Fla., and Alan Loth, of Ft. Dodge, Iowa (MacFarlane, Pettingill, MacFarlane & Fowler, of Tampa, Fla., on the brief), for appellants.

Allen E. Walker and Harry E. King, both of Winter Haven, Fla., for appellees.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

BRYAN, Circuit Judge. This is an appeal from a decree dismissing on final hearing a bill to enforce specific performance of a contract for the purchase of land.

By the contract appellee Morton agreed to purchase from appellants, Pinckney and wife, 160 acres of land located in Florida, and to pay therefor $96,000. Appellants on their part agreed to sell the land to appellee, and to convey to him a good merchantable title. The purchase price was payable as follows: $5,000 on execution of the contract, $19,000 upon delivery of deed, and the balance of $72,000 in three equal annual installments. The deferred payments were to be evidenced by notes secured by a purchase-money mortgage. Morton paid $5,000 on September 19, 1925, the date of the deed, but refused to pay more, or to accept the deed of appellants, on the ground that they did not have title to the land. He subsequently accepted title from appellee Frank Fuller, to whom he paid $1,000, and gave a mortgage for $15,000. That mortgage was placed in escrow under an agreement that it should not be delivered to Fuller, but should be returned to Morton, in the event Morton should be held bound under his contract to accept the title of appellants.

The land involved was patented to Fuller as his homestead. On August 8, 1890, Fuller and his wife, Ida, conveyed it by warranty deed to appellant Edwin A. Pinckney. The deed was regular in form, and showed upon its face a clear purpose and intent to convey the land; but it was not under seal, was not attested by subscribing witnesses,

and was not separately acknowledged by the wife for the purpose of relinquishing her dower, as required by the laws of Florida. However, it was spread upon the deed records of the county in which the land is situated. Fuller's wife, Ida, was Pinckney's sister. Pinckney took the title in trust for her, although no trust was declared. In 1899, Ida Fuller obtained a divorce from her husband, and in settlement of their affairs it was at first agreed that Fuller should have the homestead, but shortly thereafter, at her suggestion, he accepted from Pinckney $600 "in full of all demands for that Florida land." Pinckney conveyed the land to Ida Fuller by deed dated July 12, 1920, and she conveyed it back to him for a valuable consideration by deed dated July 3, 1922. These two last-mentioned deeds were executed and acknowledged in accordance with the laws of Florida (Rev. Gen. St. 1920, §§ 3787, 3823) providing for the conveyance of real estate.

It is true that Ida's separate deed to Pinckney shows on its face that it was executed "in the presence of" two witnesses, but a deed thus executed is not thereby rendered ineffective, and is upheld as being in substantial compliance with the more formal statutory language, "Signed, sealed and delivered in the presence of." Smith v. Philips, 51 Fla. 327, 41 So. 527; East Coast Lumber Co. v. Ellis-Young Co., 55 Fla. 256, 45 So. 826. Morton's attorney, Parker, who first examined the abstract of title, addressed a letter to Pinckney in Iowa, in which he stated that in his opinion the deed of 1890 conveyed no title, because it was not properly executed or acknowledged. He inclosed a form of deed to be executed by Fuller in order to remove his objections to the old deed, and gave Fuller's address in California. Pinckney communicated with Fuller, but the latter refused to execute a new deed. Shortly afterwards so-called deeds of correction were filed and recorded, but they were in reality the original deed of 1890, from Henry and Ida Fuller to Pinckney, and the original deed of 1922, from Ida Fuller to Pinckney, in each of which certain alterations had been made. The alterations in the 1890 deed consisted of the additions of seals and the words "Signed, sealed in the presence of," the signatures of two witnesses, and a new acknowledgment. The alterations in the 1922 deed consisted of striking out the words "In the presence of" before the signatures of the two witnesses, and the insertion of the words "Signed, sealed and delivered in the presence of," and a new acknowledgment. In each instance the purported new acknowledgment bore the date of the original deed.

While these altered deeds were shown on a continuation of the abstract, they did not deceive Parker, as it was apparent that the old deeds had been changed, and that new deeds had not been executed, as requested by him. Nor was Morton misled, for he testified that he inspected the altered deeds, and knew that "they were the old deeds remodeled." During the period from 1899 to 1925 Pinckney paid the taxes, and performed other acts of ownership, and the land was not held in possession adverse to him. During this period Fuller had not questioned Pinckney's title or asserted ownership. Pinckney claimed that the alterations in the deeds above referred to were not made by him, or with his knowledge or consent, but that he delivered the original deeds to a banker in Iowa, for the purpose of procuring new deeds, so as to comply with Parker's requests. Parker finally became convinced that the original deed of 1890 was sufficient to convey the title and so advised Morton. In the meantime, however, Morton had entered into negotiations with Fuller, who had come from California to assert a claim to the land, and afterwards employed another attorney, who advised that the legal title was in Fuller. Thereupon Morton accepted Fuller's title and rejected Pinckney's title, and assumed to take possession of the property. Appellants tendered a deed in correct form, and properly executed by them, and in their bill prayed that they be decreed to have a lien on the land for the unpaid purchase price, in accordance with their contract with Morton, and that the mortgage from Morton to Fuller be canceled as a cloud upon their title.

The contract sued on was an enforceable one. It was not rendered unenforceable for lack of mutuality by the circumstance that Pinckney's wife was not bound by it to convey her dower interest. It is sufficient that mutuality of remedy existed at the time suit was filed. By joining in a suit to enforce a contract, a married woman estops herself to change her position to the injury of the party sought to be bound. LeNoir v. McDaniel, 80 Fla. 500, 86 So. 435; Clark v. Andrew (C. C. A.) 11 F.(2d) 958. The purpose of executing the deed of 1890 was to place the legal title in Pinckney. Whatever title was conveyed was not defeated by any trust feature. The original purpose was carried out by the conveyance to Ida Fuller. It is immaterial that at one

time it was agreed that the title should be reconveyed to Frank Fuller, for that agreement was never carried out, and was supplanted by another agreement to the effect that the title should remain in Pinckney, who conveyed it to his sister by a valid deed properly executed, and finally became the owner of the land, free from any trust that might theretofore have existed, by virtue of a conveyance from her.

Any defect in the execution or acknowledgment of the original deed of 1890, in our opinion, was cured by chapter 10169, Laws of Florida, approved June 5, 1925. That statute was in effect before the contract here involved was made. It contains provisions which validate a deed that has been executed and delivered, and for a period of 10 years spread upon the deed records of the county in which the land lies, and where there has been one or more subsequent conveyances executed, and recorded by the party claiming under such deed: Provided that such deed show upon its face a clear and express purpose and intent of the person executing it to convey the land therein described, in the absence of any showing of fraud, adverse possession, or pending litigation, and where no attempt has been made to set aside or cancel such deed prior to the passage of the act. A deed attended by the circumstances named is declared to be valid, and to convey fee-simple title "as effectively as if there had been no lack of any seal or seals, witness or witnesses, or defect in phraseology of the acknowledgment or relinquishment of dower." Section 1.

The deed of 1890 meets every condition for validation prescribed by that act. It is contended by appellees that the act is inapplicable, because there was a showing of fraud attributable to appellants in the alteration of the deeds. If it be conceded that fraud was intended, which is at least doubtful, none was accomplished; for both Morton and his attorney were fully aware of the facts that new deeds had not been executed, and that Pinckney's title rested upon the original deed. There was no defect in the execution or acknowledgment of the second deed of 1922 from Ida Fuller to Pinckney. Appellants did not need the aid of the altered deeds in the maintenance of their suit, and did not rely upon them to sustain their claim of title. Nor does Morton's defense depend upon a claim that the deeds had been mutilated, and thus rendered untrustworthy as muniments of title; on the contrary, he assumes the position that the deed of 1890 in its original form conveyed no

title. Therefore the controversy is unaffected by the fact that the deeds were altered. "When a court of equity is appealed to for relief, it will not go outside of the subject-matter of the controversy, and make its interference to depend upon the character and conduct of the moving party, in no way affecting the equitable right which he asserts against the defendant, or the relief which he demands." 1 Pomeroy, § 399.

Our conclusions are that Morton's mortgage to Fuller should be surrendered up for cancellation, and that appellants are entitled to a decree enforcing specific performance of the contract sued on, and fixing a lien on the land involved for the unpaid purchase price.

The decree is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.