# Iron City Laundry Company, Appellant, *v.* Leyton.

*Contract—Restraint of trade—Lack of mutuality—Equity.*

A bill in equity to restrain a defendant from soliciting or collecting laundry work will be dismissed, where it appears that the plaintiff, a laundry company, agreed in writing to employ the defendant as a collector on wages and commission; that the agreement stipulated that the defendant should not leave his employment except upon two weeks' notice, and that when he did so he would not solicit laundry work; that the agreement further stipulated that the plaintiff might dismiss the defendant without notice and for any reason whatever; that the plaintiff purchased no property from the defendant; and that the defendant after withdrawing from plaintiff's service solicited work from the same customers that he had when he entered the plaintiff's employment.

Argued May 2, 1913.   Appeal, No. 188, April T., 1913, by plaintiff, from decree of C. P. Allegheny Co.,

Fourth Term, 1911, No. 103, dismissing bill in equity in case of Iron City Laundry Company v. H. Leyton and Crown Laundry Company, Limited. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Bill in equity for an injunction.

COHEN, J., found the facts to be as follows:

1. H. Leyton, the defendant, was for some years prior to 1906, employed by the Imperial Laundry Company of Pittsburg, Pa., as a collector and driver, and about the year 1905, the plant of the Imperial Laundry Company having been destroyed by fire, the defendant, H. Leyton, was employed by the plaintiff, the Iron City Laundry Company, in the same capacity, under a contract which was not offered in evidence. On June 11, 1908, the written contract, marked exhibit No. 1, which was offered in evidence, was entered into by the parties.

In said contract, the party of the second part is "H. Leyton for himself and for his minor son, Samuel Leyton." The said party of the second part agrees to act as laundry driver and collector for the party of the first part to "Collect laundry work from any and all persons from whom he can get it and bring the same to the said party of the first part and when the same is laundried to return it to the customer or agent from whom it was obtained, and to collect the money for said work, and to pay weekly to said party of the first part all money so collected, said weekly settlement to be made full and complete by said party of second part upon Tuesday of every week during the continuance of the employment under this contract: and finally upon the termination of said employment. Said party of the second part further agrees that while in the employ of said party of the first part he will be governed in the conduct of said business by the rules and directions given him from time to time, and that he will faithfully perform all his duties.

"The said H. Leyton and his minor son, Samuel Leyton, shall not voluntarily leave the employ of said party of the first part without first having given two weeks' notice in writing of the intention so to do; and in the event of the termination of said employment, whether voluntarily or involuntarily on the part of party of the second part, the said party of the second part hereby covenants and agrees that he will not for the period of ninety days thereafter, enter into the business of soliciting or collecting laundry or laundry work on his own account or in the employ or behalf of any other person, persons or company; or in any wise interfere with the good will of said party of the first part, or attempt to influence, solicit or take away for himself, or any other person, firm or corporation, any of the customers of the said Iron City Laundry Company within the County of Allegheny and State of Pennsylvania.

"This agreement may be summarily terminated and said employment ended for any cause or reason which to the Iron City Laundry Company may seem good and sufficient."

The compensation of the party of the second part is on a sliding scale, ranging from a minimum of a commission of ten per cent and a salary of $10.00 per week, to the maximum of $25.00 per week and a commission of five per cent on a total amount over $100, for both Leyton and his son.

2. At the time of Leyton's employment by the said Iron City Laundry Company the said Leyton had about 300 customers, and he has had about the same number with some variations, when the number was increased or diminished, until the present time. No customers or route, so far as the evidence shows, was given to the defendant Leyton by the Iron City Laundry Company, and it appears from the testimony the said Leyton continued to solicit work after he had entered the employ of the plaintiff from the same people that had been

giving him work previously, and from such other customers as he could make since that time.

3. In accordance with the contract and custom, the defendant Leyton settled with the plaintiff weekly, paying all bills for laundry at the end of the week without regard to whether he collected for the same from the customers, and he has $300 invested in this way. The said defendant Leyton has paid the Iron City Laundry Company in full, except for the last week.

4. On July 24, the defendant, H. Leyton, entered the employ of the Crown Laundry, without any knowledge of the Crown Laundry of his employment by the Iron City Laundry.

5. Plaintiff admits that when Leyton started to work for it he had a route of customers of his own and that plaintiff never furnished him with any customers.

6. The contract was duly executed by the parties and has been executed and carried out continuously according to its terms by both parties from its date until July 24, 1911. The defendant Leyton left the employment of plaintiff on July 24, 1911, voluntarily without giving two weeks' notice as required by the contract.

7. Defendant on July 24, 1911, entered the employment of the Crown Laundry, Limited, and solicited laundry work of his former customers.

8. Plaintiff has performed its part of the contract by paying wages and commissions to the defendant under the contract and at its own expense furnishing the defendant with horses, wagons and necessary equipment to enable him to perform his part of the contract.

The court entered a decree dismissing the bill.

*Error assigned* was the decree of the court.

*Wm. Kaufman,* with him *Dunn & Moorhead,* for appellant, cited: Erie County Milk Assn. v. Ripley, 18 Pa. Superior Ct. 28; Phila. Base Ball Club v. LaJoie, 202 Pa. 210; Eureka Laundry Co. v. Long, 146 Wis. 205.

*Chas. H. Sachs*, for appellee, cited: Seward v. Shields, 9 Pa. Dist. Rep. 583.

OPINION BY ORLADY, J., October 13, 1913:

The plaintiff obtained an injunction from the court of common pleas of Allegheny county, to restrain the defendants from soliciting or collecting laundry work on Leyton's account, or on behalf of the other defendant, etc. On final hearing the injunction was dissolved and the bill dismissed with costs.

The plaintiff is engaged in the general laundry business, and by an agreement in writing employed Leyton as a driver and collector, and agreed to pay him a salary of $10.00 per week, and a commission on all business handled wholly and exclusively by him, etc. By this agreement, Leyton agreed that he would not voluntarily leave the plaintiff's employment without giving two weeks' notice, and in the event of the termination of the employment, either voluntarily or involuntarily, he would not solicit or collect laundry work on his own account or on behalf of any other party for a period of ninety days, etc. The concluding clause is as follows: "This agreement may be summarily terminated and said employment ended for any cause or reason which to said Iron City Laundry may seem good and sufficient." It clearly appears from the testimony, that the plaintiff purchased no property of any kind from the driver or collector they thus employed, and it as clearly appears that, at the time of making the contract, Leyton had a well-established list of customers or patrons, whom he had served from the Imperial Laundry, and transferred their custom work to the Iron City Laundry Company with his service, and at the hearing of this case he stood ready to produce in court about forty of these to testify to that relation with him.

Further, the court finds, that at the final hearing plaintiff's counsel admitted, "That the persons whose laundry work was solicited by the defendant and

brought to the plaintiff's laundry were the customers of the defendant, Leyton." There is no evidence tending to show that the plaintiff furnished to Leyton any of its own recognized customers, or on any particular route; he was plainly and simply hired to collect laundry work from any source he could secure it. The only consideration was purely a nominal one, $1.00, together with the specified wages for defined services, which by the clause quoted, could have been summarily terminated for any cause and without any liability on the part of the plaintiff.

There arose a substantial controversy between the parties which affected the character of Leyton. He was charged with falsifying his returns and withholding money which he resented, and then convinced his employer that he was not in any default. The result of this false charge affected him with others, and he withdrew from plaintiff's service. This bill is substantially one, for specific performance of a hard-featured contract. It is so palpably one-sided that it could be terminated on a moment's notice "for any cause or reason" by the plaintiff, and yet by its terms the defendant, Leyton, was to be prevented for ninety days from working at the regular avocation he had established before he began to work for the plaintiff, and which he transferred to its laundry. No damage to the plaintiff is suggested, and the case is not one for equitable relief.

The facts of this case are so unlike the controlling ones in Erie County Milk Association v. Ripley, 18 Pa. Superior Ct. 28, and Phila. Base Ball Club v. Lajoie, 202 Pa. 210, that the reasoning of these cases convinces us of the justice of the decree entered by the court below. See also Turner v. Abbott, 6 L. R. A. (N. S.) 893, n, and Taylor Iron & Steel Co. v. Nichols, 24 L. R. A. (N. S.) 933, n.

The decree is affirmed.