## INCORPORATED TOWN OF LAURENS, IOWA, v. NORTHERN IOWA GAS & ELECTRIC CO. and four other cases.*

(Circuit Court of Appeals, Eighth Circuit. August 4, 1922.)

Nos. 5592–5596.

1. **Specific performance ⬡⟿32(1)—Test of mutuality in contract should be applied when performance is sought.**

In a suit for specific performance, defended on the ground that the contract sought to be enforced is void for want of mutuality, the test of mutuality should be applied when performance is sought, and if, at that time, a consideration has been rendered, a promise otherwise invalid may be enforced.

2. **Specific performance ⬡⟿32(3)—Executory agreement for sale and delivery of goods and supplies must be obligatory on both parties.**

An executory contract for the sale and delivery of goods or supplies must be obligatory on both parties, or it lacks mutuality and is not enforceable.

3. **Specific performance ⬡⟿32(3)—Contract between electric power company and town, not requiring town to purchase the company had obligated itself to furnish, held not enforceable for want of mutuality.**

Contract between town and electric power company, obligating the company to furnish electricity to the town without requiring the town to purchase the electricity, except as it might desire, will not be specifically enforced, though the town has made expenditures to facilitate the transmission and distribution of electricity to be furnished by the company; the contract being void for want of mutuality.

Appeal from the District Court of the United States for the Northern District of Iowa; Henry T. Reed, Judge.

Suits by the Incorporated Town of Laurens, Iowa, by the Incorporated Town of Fonda, Iowa, by the Incorporated Town of Pomeroy, Iowa, by the Incorporated Town of Luverne, Iowa, and by the Incorporated Town of Kanawha, Iowa, against the Northern Iowa Gas & Electric Company, and by the Northern Gas & Electric Company against the Incorporated Town of Luverne, Iowa. Decrees for the Northern Iowa Gas & Electric Company (262 Fed. 711, 712), and the Towns appeal. Affirmed.

John Hammill, of Britt, Iowa, and Fred C. Gilchrist, of Laurens, Iowa (Healy & Faville, of Ft. Dodge, Iowa, on the brief), for appellants.

B. J. Price, of Ft. Dodge, Iowa (Price & Burnquist, of Ft. Dodge, Iowa, on the brief), for appellee.

Before HOOK, Circuit Judge, and COTTERAL and JOHNSON, District Judges.

COTTERAL, District Judge. Of these five actions, four were brought, respectively, in a state court, by the towns of Laurens, Fonda, Pomeroy, and Kanawha, in Iowa, against the Northern Iowa Gas & Electric Company, and the other by that company in the court below against the town of Luverne, in the same state. The question involved in each of the cases was whether the towns might demand en-

---

⬡⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied October 21, 1922.

forcement of certain contracts with the company to furnish to them electric current from its plant at Humboldt, Iowa. Both sought injunctions—the towns against the threatened withdrawal of the current, and the company against the appropriation of it. The District Court sustained motions of the company to dismiss the bills of the plaintiff towns, and to strike the answer of Luverne. Thereupon decrees were entered in favor of the company, from which these appeals were taken. Opinions were filed in all of the cases, two of them being reported in 257 Fed. 818, and 262 Fed. 711.

The Laurens Case may be taken as sufficiently illustrative. The original contract of December 17, 1912, provides that "the company agrees to sell and furnish to the town during a period of 10 years * * * all electricity and current that shall be desired by the town or its patrons, along its transmission line (whether within or without the town), for lighting purposes, or for power purposes, or for other lawful use," with privilege of renewal by the town at its option for successive 10-year periods until 1952. Stipulations follow relative to the transmission of current from the plant of the plaintiff, the rates and service, and the purpose of the town to supply other patrons. The company was to build and maintain the transmission line from its power house to a substation at Rolfe, the line therefrom to the town was to be built and maintained by it, and the right of way was to be obtained by the company and belong to the town. There were provisions respecting patronage, competition with the town, telephone service, purchase of supplies, and cost to the town of maintenance and repair. The town was to expend $15,000 for light and power, and the company was to furnish bond, guarantee its agreed rates, and equalize them with others. There were specifications for the local light and power system. The company agreed to provide a substation and local equipment. The town agreed to pay the company $14,000 for building the plant and give bond to perform its contract.

There was another contract relative to the bond; also, a supplemental contract. By the latter, the town granted to the company the use of the transmission line to furnish current for 25 years to Pocahontas, Pomeroy, and Fonda. The company was to rebuild the line, install switches, build and maintain a line to Pocahontas, which was to belong to Laurens, and granted Laurens the right to sell electricity. The company was to pay the taxes on the line from Rolfe to Pocahontas, Laurens was to have night service, and prior contracts were otherwise unchanged.

The bill of the town sets out the contracts, and alleges that for some years the company had been furnishing the electric current as agreed to the town and its patrons, with whom it had other contracts and assumed obligations, that they were all without other supply, that it was necessary to them, and otherwise it would sustain irreparable loss and injury, and that the contracts had been recognized as being in full force, and had been carried out, but that the company had served a notice to the effect that the state board of conciliation, at a hearing, had ruled that under the abnormal conditions the contract rates should be abrogated and higher rates substituted, and that, unless they were

282 F.—28

accepted, the company would cease to furnish current or power. It was also alleged that the town had no other adequate remedy and would be subjected to a multiplicity of suits, and a mandatory injunction was sought against the threatened action of the company.

There was an amendment to the bill directed chiefly to matters of remedy. By a second amendment, the expenditures of the town and the benefits to the company were emphasized, and it was claimed the company was estopped to repudiate the contract, that the town had an option to demand the current, and the company was bound and owed a public duty to furnish it. By another amendment, D. M. Sterns, vice president and chief officer of the company, appears to have been made a defendant, and it was alleged that he had conspired with it to extort the higher rates from the town.

The company answered, by admitting certain averments and denying others, including the conspiracy, and alleged that the contracts lacked mutuality, that the rates were unreasonable and confiscatory, that the additional charges were justified, and it prayed a dismissal of the bill. Sterns also answered, denying the conspiracy and the acts imputed to him. By the final decree in this case, the temporary injunction granted by the state court was dissolved, and the bill was dismissed.

Counsel for appellants concede the similarity of the other cases. In their brief, after reviewing the facts in the Laurens Case, they say that the Pomeroy Case differs only in that there was a single contract, whereby the town was to pay the company $12,000 for building a transmission line therefrom to Pocahontas, and the company was to have the use of that line to supply Fonda and other patrons; that the facts in the other cases are substantially the same, except that by the contract in the Kanawha Case the company was to build the transmission line therefrom to Corwith, and be reimbursed for the outlay at a cost to the town of $9,000, provided the town should construct the transmission line between Humboldt and Corwith; that this was part consideration for current, and in reliance upon the contract the town built electrical lines and incurred numerous obligations. In the other three cases brought by the towns, like decrees of dismissal were entered.

In the bill of the company against Luverne, it was alleged that it had the contract with the town and various other towns for the sale of electricity; that the contract rates had become nonremunerative and confiscatory, and there was an agreement for an increase, wherefore the proceedings before the state board of conciliation had been dismissed, but the town had repudiated it; that the company had disconnected its tension wire from the town, and notified it service would not be furnished at the contract rates, because the contract was void for lack of mutuality, but that the town had repeatedly connected its distributing system with the wire and appropriated the current; that the company had no other adequate remedy, wherefore an injunction against the same was prayed. Upon notice and hearing a temporary injunction was awarded the company, upon the ground that the contract lacked mutuality and was void. The petition was amended, the

town answered, presenting a like controversy as to the other cases, and, the answer being stricken on motion, the injunction was made perpetual by a final decree.

[1-3] As heretofore indicated, the same disposition should be made of all these cases. This is because of the common provision in the primary contracts that the company was to sell and furnish the electricity that might be desired by the towns or their patrons. Undoubtedly, as counsel for the appellants contend, the test of mutuality in contracts should be applied when performance is sought, and it is settled law that, if at that time a consideration has been rendered, a promise otherwise invalid may be enforced. But we do not find that the considerations in these cases subsequent to the making of the contracts suffice to bring them within the rule. It is true the towns made expenditures to facilitate the transmission and distribution of electricity to be furnished by the company, but there was no engagement to take and pay for it, except as they might desire. The fact remained that at all times they were without obligation to do so. Fundamentally, an executory agreement for the sale and delivery of goods or supplies, to be effective, must be obligatory on both parties, or it lacks mutuality and is not enforceable. Having reserved absolutely the election to do as they might see fit relative to their patronage of the company in the future, by annexing such a condition to performance of the contract by them, the compact was not binding on the company.

This principle was announced by this court in Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696, and confirmed in later cases. As was said in that case:

"An accepted offer to sell or deliver articles at specified prices during a limited time in such amounts or quantities as the acceptor may want or desire in his business, or without any statement of the amount or quantity, is without consideration and void, because the acceptor is not bound to want, desire, or take any of the articles mentioned."

We therefore conclude that the decrees in each of these cases should be and they are accordingly affirmed.

HOOK, Circuit Judge, participated in the hearing of these cases, but died before a final conclusion was reached.