J. F. THOMPSON v. SHELL PETROLEUM CORPORATION, a Georgia Corporation authorized to do business in this State.

178 So. 413.

Division B.

Opinion Filed January 22, 1938.

*S. E. Durrance* and *H. N. Roth,* for Appellant;

*George Palmer Garrett,* for Appellee.

BROWN, J.—This is an appeal from an order of the Circuit Court of Orange County, granting an injunction to the Shell Petroleum Corporation, enjoining Thompson, appellant, from violating or cancelling a sub-lease contract entered into by the parties hereto.

The appellant leased a filling station from the City of Orlando, on June 21, 1933, for a period of five years. There was a provision in the lease whereby appellant could not sublease the property without the written consent of the lessor. A resolution was passed by the City Commission of Orlando whereby appellant was authorized to sublease the property to the appellee, subject, however, to a condition that "the said Shell Petroleum Corporation (appellee) shall at all times during the period of sub-tenancy of it, employ the said J. F. Thompson to operate said premises in all respects whatsoever." Appellant then sub-leased the property to the appellee Corporation, which sub-lease contained a clause allowing the Shell Corporation the privilege to cancel the lease by giving fifteen days notice and by paying the appellant Thompson $100.00. The sublease contained no provision allowing appellant to terminate the lease upon any condition.

On the next day, an agreement was entered into between these parties whereby appellant was employed to operate the station. This "Dealer's license agreement" contained a provision allowing either party to revoke it by giving ten days notice.

Appellant operated the station for some time and then gave fifteen days notice to the appellee that he would cancel the employment agreement and the sub-lease.

The appellee Corporation secured an injunction to prevent appellant ·from cancelling or violating the sub-lease contract. Appellant appeals from this decree.

There are two questions before the court: Should the contract of employment and the sub-lease be construed together in such a way as to give Thompson the privilege of cancelling the sub-lease *also,* in view of the fact that the permission to sub-lease, granted by the City of Orlando, contained a condition that the Shell Corporation shall at all times during the sub-tenancy employ the said J. F. Thompson to operate the said premises in all respects whatsoever?

If Thomspon has no privielge of cancelling *the lease* should the Shell Corporation be allowed to negatively enforce its specific performance by injunction, when Thompson could not enforce the lease against the Shell Corporation; in other words, is this a contract that can not be enforced by injunction against its breach because there is no mutuality of remedies?

In considering the first question, we find that it is the appellant's contention that employment of Thompson was a condition attached to the City of Orlando's permission to sublet, and that the sub-lease and the employment contract were made in carrying out the agreement—i. e. there must be a hiring of Thompson or the sub-lease would not be permitted by the city, and that both the sub-lease and the contract must be construed together. We have no quarrel with this part of the appellant's contentions. We are of the opinion that we should consider the whole transaction in its entirety and look at each instrument in view of the other and thus we will be aided in the construction and interpretation of the instruments. The appellant further contends that by construing these two instruments

together, inasmuch as the sub-lease is conditioned on the employment of Thompson, that the clause permitting the parties to the employment contract to cancel on ten days notice should also be construed as a part of the sub-lease. We are convinced that this line of reasoning is erroneous. By the plain terms of the contract to sub-lease the appellee is expressly given the right to cancel the sub-lease on fifteen days notice and the payment of $100.00. Can it be imagined that it was the intention of the parties that either one should be allowed to breach this sub-lease upon ten days notice as allowed in the employment contract? Such an interpretation would be in violation of the intent of the parties as is clearly expressed by the provisions of the sub-lease. We can not take the "ten days cancellation clause" out of the employment contract and substitute it for the clearly expressed provisions in the sub-lease, whereby only the appellee was allowed to cancel the contract and it must give fifteen days notice and pay $100.00 for the privilege.

The city allowed this sub-lease subject to a condition. Of course when Thompson on his own initiative gave his ten days notice and revoked his contract of employment, *if he didn't continue to work for the Shell Corporation,* then, by his own act, this condition would be broken, but we are of the opinion that the only one who could complain of this broken condition was the City of Orlando. As between the parties to the sub-lease, none of the provisions in the sub-lease having been broken, Thompson could not complain. Thompson must abide by the sub-lease, even though the condition as to his employment, imposed by the city, was revoked. He cannot complain, especially since he revoked his employment by the Shell Corporation by his own voluntary act.

We are of the opinion, after reviewing the testimony of Thompson, that there had not been any *actual* termination of employment between Thompson and the Shell Corporation. After he gave notice that he was revoking his employment contract and cancelling the sub-lease, he continued to work for the Shell Corporation under the same provisions. He was still employed by the Shell Corporation, when this suit was tried, and so the City of Orlando could not have complained, as there had not, as yet, been any actual breach of the condition.

The City of Orlando probably contemplated that Thompson and the Shell Corporation would enter into some sort of an agreement, but it was not specified what sort of an employment contract there should be between appellant and appellee, and as long as the appellant was actually employed by the appellee to operate the premises, whether by a dealer's license agreement, oral agreement or what not, the condition was not violated. To reiterate, under the existing state of affairs, neither Thompson nor the City of Orlando could terminate the lease lawfully because all the provisions had been substantially complied with.

The second question then is whether the Shell Corporation should be allowed an injunction to prevent Thompson from cancelling the sub-lease, and thus indirectly get specific performance of the contract against Thompson, when Thompson could not specifically enforce the sub-lease against the appellee if it saw fit to give due notice, pay the $100.00, and cancel it; i. e., is this a circumstance which would prevent the appellee from being granted an injunction because there was no mutuality of remedies available?

We find by a review of the authorities that usually the same general rules apply to injunctions against the breach of a contract that apply to specific performance.

"An injunction restraining the breach of a contract is a negative specific enforcement of that contract. The jurisdiction of equity to grant such injunction is substantially coincident with its jurisdiction to compel a specific performance. Both are governed by the same doctrines and rules; and it may be stated as a general proposition that wherever the contract is one of a class which will be affirmatively specifically enforced, a court of equity will restrain its breach by injunction, if this is the only practical mode of enforcement which its terms permit."

"The tendency of the American Courts has been to limit, rather than to enlarge, the jurisdiction in cases of contracts. English Courts will enjoin the violation of some contracts, even though they can not be specifically enforced. The American Courts with few exceptions refuse to adopt this doctrine." Pomeroy's Equity Jurisprudence, 4th Ed. Sec. 1341, Vol. 4.

See also Sec. 1691 of the cited work, and the large number of cases that have quoted the above principle.

We also find that:

"As a general rule, to which there are few exceptions, an injunction to restrain a breach of contract operates as, and effects all the purposes of a decree for specific performance. And usually the breach of a contract will not be enjoined unless there be a mutuality of remedy as well as of obligation."—The Law of Injunctions by Lewis and Spelling, p. 288, Sec. 129; and again on p. 292, Sec. 132, we find, "As a general rule, where there is a lack of mutuality in the remedy, courts of equity will aid neither of the parties in the enforcement of the contract by granting an injunction but will leave them to their remedy at law."

The following cases are cited: Swanson v. Ledever, 158 Ill. App. 547; Advance Oil Co. v. Hunt, 116 N. E.

340; Iron City Laundry Co. v. Leyton, 55 Pa. Super. Ct. 93; Ginsburg v. Woolworth Co., 177 App. Div. 364.

In the case at bar, the appellee, who was the plaintiff in the court below, had the option to cancel the contract (sublease) on fifteen days notice. Let us examine the authorities and see what they say about the enforcement of a contract by injunction when it contains such a provision.

"A contract may contain a provision that, although not originally optional or lacking in mutuality of obligation, it may be totally or partially terminated or revoked at the volition of one of the parties. Where the obligation sought to be enforced rests upon the performance of such an optional consideration by the plaintiff, the power of the court to grant complete relief to both parties is usually lacking, and compulsory performance will not be decreed. The principle is not based on want of consideration or want of mutuality of obligation, 'but on the ground that the court will not decree specific performance unless it can compel performance by both parties, and it can not compel performance by the plaintiff as he could avoid the decree at any time by revoking the contract. Unless there is mutuality of remedy at the time that coercion is sought, so that the court will bind both parties and accomplish a full performance of the contract, the court refuses to exercise its equity powers and leaves the parties to their remedy at Law.' Where it is left to one of the parties to an agreement to choose whether he will proceed or abandon it, neither can specifically enforce it." Lawrence on Equity Jurisprudence, Sec. 145, Vol. 1, citing the following cases: Reichert v. Pure Oil Co., 204 N. W. 882; Berry v. Frisbie, 86 S. W. 558; Southern Express Co. v. Western N. C. Ry. Co., 99 U. S. 191; Laureens v. Northern Iowa Gas and Elec. Co., 282 F. 432; Miami Coca-Cola Bottling Co. v. Orange

Crush Co., 296 F. 693; Ulrey v. Keither, 86 N. E. 969; Fowler Utilities v. Gray, 79 N. E. 897; Freeman v. Fishman, 245 Mass. 222.

Again in Page on Contracts, Sec. 3381, we find:

"If one party has the option under the contract to terminate it at will, he can not have an injunction against the adversary party who has no such option. Even on this point, however, *the authorities are not unanimous."* Citing Marble Co. v. Ripley, 77 U. S. 339; Fowler Utilities Co. v. Gray, *supra;* Rust v. Conrad, 11 N. W. 265; Franklin Telegraph Co. v. Harrison, 145 U. S. 459; Philadelphia Ball Co. v. Lajoie, 51 Atl. 973.

In 32 C. J. p. 195, Sec. 297, there is shown to be considerable conflict in the opinions and cases cited:

"According to some decisions the fact that a contract is terminable at the option of one only of the parties does not of itself render the contract objectionable for lack of mutuality of remedy, or prevent the party in whose favor the option exists from enjoining a breach of the contract where a proper case is otherwise made out for equitable relief by injunction." Citing cases of Singer Sewing Machine Co. v. Union Button Hole, etc., Co., 22 Fed. Cas. No. 12, 904; McCall Co. v. Wright, 91 N. E. 516; Philadelphia Ball Club v. Lajoie, *supra;* Grove v. Hodges, 55 Pa. 504. (In foot note) "Reason for this view"—"The legal principle that contracts must be mutual does not mean that in every case each party must have the same remedy for a breach as the other. Mere difference in the right stipulated for does not destroy mutuality of remedy, as the contract covers a wide range of obligations and duties as between the parties, and it may not be impaired so long as the bonds of reasonableness and fairness are not transgressed." Citing two Pennsylvania cases. The text continues: "Other

decisions have held that there is no mutuality of remedy in a contract terminable at the option of only one of the parties and that a breach of the covenant will not be enjoined at the suit of the party in whose favor the option is given." Citing cases of Ulrey v. Keither, *supra;* Marion County Oil Co. v. Dykstra, 165 Ill. A. 390; Fowler Utilities Co. v. Gray, 79 N. E. 897; Advance Oil Co. v. Hunt, 116 N. E. 340; Metropolitan Exhibition Co. v. Ward, 9 NYS 779."

One of the best discussions of our present problem can be found in Pomeroy's Equity Jurisprudence, 2nd ed., Vol. 5, Sec. 744:

"The latest extension of the defenses of lack of mutuality is to contracts which are terminable at the will or option of the plaintiff; a common example being the contract lease for the purposes of mineral exploration and development, with a stipulation that the lease may be surrendered at any time at the will of the lessee. A line of cases holds that inasmuch as specific performance would be refused at the suit of the lessor, since the lessee would have it in his power to render the decree of the court nugatory by immediately surrendering his lease, therefore the lessee, however ready, willing and able to comply with his part of the contract for a considerable length of time, must fail of relief." (Foot Note) "The rule in question is not of very long standing. It dates from dictum in the case of Rutland Marble Co. v. Ripley (1870) 19 L. Ed. 955, and the decision in Rust v. Conrad, 11 N. W. 265 (Cooley, J.) The cases succeeding these appear to have followed these eminent courts on the assumption that the rule was established by a long line of unquestioned authorities; none of them bear internal evidence of having examined the subject on principle. See Brooklyn Club v. McGuire, 116 Fed. 782; Iron Age. Pub. Co. v. Western Union Tel. Co., 3 So.

449; Harrisburg Club v. Athletic Ass'n, 8 Pa. Co. Ct. Rep. 337; Kenyon v. Weissberg, 240 Fed. 536; Watford Oil and Gas Co. v. Shipman, 84 N. E. 53; Ulrey v. Keither, *supra;* Advance Oil Co. v. Hunt, *supra;* etc. The well-known rule that specific performance is to be refused of a contract to enter into a partnership at will is pointed to as proof. The analogy, however, does not bar examination. The plaintiff, in the cases in question, gives a sufficient practical demonstration of his desire to carry out the contract and not abandon it by going to the expense of bringing the suit. But the fallacy of these decisions goes deeper than this. Relief is refused, not because the court is unable to secure such performance as is due from the plaintiff while he elects to keep the contract alive, but because the court is unable to compel the palintiff to do something *that he has never contracted to do,* viz., to keep the contract alive for a definite predetermined period. These holdings assume that the doctrine as to mutuality is an artificial rule of reciprocity, and wholly lose sight of its fundamental purpose, which is simply to secure performance on the plaintiff's part of his executory promise. The better view is that of the Circuit Court in Singer Sewing Machine Co. v. The Button Hole Co. There the court held that the objection of lack of mutuality would not prevent the enforcement of the contract, so long as it was actually kept alive by plaintiff's continued performance. Citing these cases: Sturgis v. Gaindo, 43 Am. Rep. 239; Singer Sewing Machine Co., *supra;* Philadelphia Ball Club v. La Joie, *supra;* Zelleken v. Lynch, 104 Pac. 563; McCall C. v. Wright, 91 N. E. 516; Edison Illuminating Co. v. Eastern Pennsylvania Power Co., 98 Atl. 652."

The above reasoning seems to us to deserve consideration. There is undoubtedly a hopeless conflict in the cases on

this point of law in other jurisdictions; so we believe that we would do well to fairly consider the present case on principle, and not merely complacently follow what appears to be the bare weight of authority.

This Court has not passed on the question in a case involving the factual status here presented, but it has laid down several principles that directly bear on this subject. In the case of Love v. Miami Laundry Co., 118 Fla. 137, 160 So. 32, the Court was considering the enforcement of a provision in a contract of employment by which the driver of a laundry truck agreed that "for one year immediately after his discharge by said company, he will not either directly or indirectly make known or divulge the names or addresses of any of the customers, patrons or agents of said company to any person whatsoever, and that for a space of one year after his discharge or quitting the employment of said company, he will not directly or indirectly, either for himself or any other person, firm, company or corporation, call upon, solicit, divert or take away any of the custom, business or patronage of such company upon which he called or whom he solicited, etc."

Justice BUFORD, speaking for the Court, states:

"A court of equity should not lend its power to enforce the provisions of an executory contract against one of the parties unless the terms and conditions of the contract are such that the court of equity might enforce at least part of the terms thereof against the other party."

Justice DAVIS, in his concurring opinion in the same case, states:

'A court of equity will not interevene to enforce specific performance negatively by enjoining breach of a restrictive labor covenant, where it has been made to appear that the contract is harsh and oppressive in favor of the employer

against the employee, or is otherwise lacking in fairness or mutuality of obligation between the parties to it."

We submit that the principles as set out above are not applicable to the case at bar for several reasons. First the principles above stated were applied to an entirely different type of case. In those cases the contract was between two parties of unequal contracting power; i. e., the employer was presumed to be able to dictate his own terms, more or less. The above cases were founded on contracts that were held to contain some element of unfairness and that worked an undue hardship on one party. In the case at bar, the contract was a fair one and was not unduly harsh on the appellant. The parties to the sub-lease were apparently not in such a situation that either could dictate terms to the other. Thus we have here a different situation from the above cases. We are of the opinion that the appellant could have obtained a temporary injunction against the appellee, had it attempted to exercise its option and break the lease without giving fifteen days' notice or the payment of $100.00 consideration, if he could show that he, too, would suffer any irreparable injury.

Our court seems to agree with the authorities that "An injunction against the breach of a contract is a negative decree of specific performance of the agreement, and the general rule is that the power and the duty of equity to grant the former is measured by the same rules and practice as its power and duty to grant the latter relief." See Seaboard Oil Co. v. Donovan, 99 Fla. 1296, 128 So. 821.

There seems to be little or no precedent in this State to follow in deciding the exact question before us. If we look to other jurisdictions we find a great conflict among the cases found there, so we are of the opinion that we must decide this case strictly upon principle. We are inclined to agree with the reasoning of Pomeroy and some of the cases

cited in Corpus Juris, *supra.* From them we glean the following:

"The fact that the contract (sub-lease) is terminable at the option of one only of the parties does not of itself render the contract objectionable for lack of mutuality of remedy, or prevent the party in whose favor the option exists from enjoining a breach of the contract where a proper case is otherwise made out for equitable relief by injunction. The legal principle that contracts must be mutual does not mean that in every case each party must have the same remedy for a breach as the other. Mere difference in the right stipulated for does not destroy mutuality of remedy * * * so long as the bounds of reasonableness and fairness are not transgressed." (32 C. J. Injunctions 297.) "The plaintiff in the case in question gives a sufficient practical demonstration of his desire to carry out the contract and not abandon it by going to the expense of bringing the suit. But the fallacy of these decisions goes deeper than this; relief is refused, not because the court is unable to secure such performance as is due from the plaintiff while he elects to keep the contract alive, but because the court is unable to compel the plaintiff to do something *that he has never contracted to do,* viz., to keep the contract alive for a definite predetermined period. These holdings assume that the doctrine as to mutuality is an artificial rule or reciprocity and wholly lose sight of its fundamental purpose, which is simply to secure performance on the plaintiff's part of his executory promise. The better view is that of the Circuit Court in Singer Sewing Machine Co. v. The Button Hole Co., *supra.* There the court held that the objection of lack of mutuality would not prevent the enforcement of the contract so long as it was actually kept alive by plaintiff's continued performance."

In the case at bar, the sub-lease was not unfair. The reservation of the right of the Shell Company to cancel the lease was conditioned upon a fifteen days' notice and the payment to the appellant of $100.00. A cancellation of the lease by the Shell Company would not necessarily cause appellant any great loss, while on the other hand, the Shell Company had to go to considerable expense in painting signs, installing equipment, etc., and would lose considerably by a breach of the lease. The fact that the appellant gave the Shell Company the right to cancel the lease upon fifteen days' notice and upon payment of $100.00 as consideration for this privilege, should not be allowed to defeat the right of either party to enforce the provisions of the sub-lease.

In Gautier, *et al.,* v. Bradway, 87 Fla. 193, 99 So. 879, this Court, citing a number of other Florida decisions, held that applications to enforce specific performance of contracts for the sale of land are addressed to the sound judicial discretion of the chancellor, such discretion to be controlled by the principles of law and equity as applied to the facts and circumstances of the particular case, and when thus controlled his decision will not be disturbed on appeal, unless *clearly erroneous.* See also in this general connection Massari v. Salciccia, 102 Fla. 847, 136 So. 522; Booth v. Babbit, 114 So. 513, 94 Fla. 704; Calumet Co. v. Oil City Corp'n, 114 Fla. 531, 154 So. 141.

The decree appealed from is accordingly affirmed.

WHITFIELD, P. J., and CHAPMAN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.