77 So.2d 629 (1955)
UNITED LOAN CORPORATION OF TAMPA, a Florida Corporation, Appellant,
v.
Howard E. WEDDLE and M.A.C. Credit Co., Inc., a Florida Corporation, Appellees.
Supreme Court of Florida. En Banc.
January 28, 1955.
Robert H. Carlton, Tampa, for appellant.
James S. Welch and Leonard C. Carter, Lakeland, for appellees.
PER CURIAM.
Affirmed.
TERRELL, THOMAS, HOBSON and ROBERTS, JJ., concur.
MATHEWS, C.J., SEBRING and DREW, JJ., dissent.
DREW, Justice (dissenting).
The appellee, Weddle, entered into an employment contract with the State Loan and Finance Corporation and its subsidiary, City Finance Service, Inc., small loan companies chartered under the laws of Florida, whereby Weddle was employed as manager of their office at Tampa at a monthly salary of $425. This contract was dated the 25th day of April, 1952 and in it contained a provision that either Weddle or the employer could terminate the contract by giving five *630 days written notice to the other but if the employer terminated it, except for cause, that Weddle would be entitled to be paid a month's salary. It was agreed in the contract that Weddle would be faithful and loyal in the performance of his duties and would diligently promote the interests of his employer and would not "disclose any facts with reference to the business of the company * * *" and would "keep secret from every person, firm or corporation the names of past, present and prospective borrowers, security holders and all other business customers and associates of the company." In addition to that he agreed to a provision in the contract, which is the nub of this litigation, and reads as follows:
"H.E. Weddle further agrees that for a period of two years after the termination of his employment for any reason that he will not engage in any way directly or indirectly in any business competitive with the company's business nor solicit or in any other way or manner work for and assist any competitive business in the city of Tampa, Florida or within fifteen miles of the city limits of said city as these limits exist on the date of this agreement."
Weddle resigned from his employment on July 21, 1953 and entered the employment of the M.A.C. Credit Co., Inc., a competing small loan company, whereupon action was instituted in the lower court to enjoin Weddle from violating the contract and for other relief.
The lower court, after taking testimony, refused to enjoin the breach of the contract being of the opinion that the case was governed by the holding of this court in Love v. Miami Laundry Company, 118 Fla. 137, 160 So. 32, 34, wherein this Court refused to exercise its equitable powers of injunction against truck drivers previously employed by Miami Laundry under contracts of employment somewhat similar to the one here under scrutiny.
I hold the view that the lower court clearly misconceived the true holding in the above case and was in error in holding that the instant case is governed by the holding of this Court in that case. In the first place, the holding of this Court in Love v. Miami Laundry Company, supra, both in the original opinion and on rehearing was summed up in the statement which appears therein:
"It is not necessary that we hold the contract to be invalid as in contravention of subdivision 1 of section 5723, R.G.S., section 7948, C.G.L. [F.S.A. § 542.05], but it is sufficient to say that equity should withhold injunctive relief which is sought for the purpose of coercing specific performance of such contract."
There is vast factual difference between the type of employment in the Miami Laundry case, supra, and in the instant case. In the former instance, the employees covered by the contract were numerous and their employment covered a designated area or route. The responsibility of the position and the importance of it to the laundry was not of the same category as that of the manager of this loan company in the instant case. Moreover, the loan market was vastly different in 1932 than in 1952. In the later case of Thompson v. Shell Petroleum Corporation, 130 Fla. 652, 178 So. 413, 418, 117 A.L.R. 248, we had occasion to discuss the principles laid down in Love v. Miami Laundry Company as it applied to the situation presented in that case. In this latter case, this Court said in speaking through the late Justice Brown:
"First, the principles above stated were applied to an entirely different type of case. In those cases the contract was between two parties of unequal contracting power; i.e., the employer was presumed to be able to dictate his own terms, more or less. The above cases were founded on contracts that were held to contain some element of unfairness and that worked an undue hardship on one party. In the case at bar, the contract was a fair one and was not unduly harsh on the appellant. The parties to the sublease were apparently not in such a situation that either could dictate terms to the other. Thus we have here a different situation from the above cases. We are *631 of the opinion that the appellant could have obtained a temporary injunction against the appellee, had it attempted to exercise its option and break the lease without giving fifteen days' notice or the payment of the $100 consideration, if he could show that he too would suffer any irreparable injury." (Emphasis supplied.)
It is pertinent to observe that the 1953 session of the Florida Legislature enacted Chapter 28048, which now appears as Section 542.12, Florida Statutes, 1953, F.S.A., paragraph (2) of which reads as follows:
"One who sells the good will of a business, or any shareholder of a corporation selling or otherwise disposing of all of his shares in said corporation, may agree with the buyer, and one who is employed as an agent or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area, so long as the buyer or any person deriving title to the good will from him, and so long as such employer continues to carry on a like business therein. Said agreements may, in the discretion of a court of competent jurisdiction be enforced by injunction."
Obviously, the above statute was not in effect at the time the contract between Weddle and his employer was entered into but it is equally clear that, so far as the public policy of Florida is concerned, it contains a clear indication that the public policy of this State will not be offended by enforcing the reasonable provisions of contracts of the nature here involved. It is elementary that laws passed subsequent to the date contracts are entered into cannot affect substantive rights of the parties under the contract. It is equally a well-settled principle of law that remedial rights or means of enforcing existing contracts may be the subject of proper legislation. Mahood v. Bessemer Properties, Inc., 154 Fla. 710, 18 So.2d 775, 153 A.L.R. 1199. Also see State ex rel. Van Ingen v. City of Panama City, 126 Fla. 776, 171 So. 760.
In the case of McNair v. Knott, 302 U.S. 369, 373, 58 S.Ct. 245, 247, 82 L.Ed. 307, 310, the Supreme Court of the United States said that legislative acts "placing the stamp of legality on a contract voluntarily and fairly entered into by parties for their mutual advantage takes nothing away from either of them."
The record in this case shows that Weddle was a business man of many years experience and had been engaged in the small loan or similar businesses for a good number of years. He was apparently a man of considerable experience and business ability to have commanded the salary provided for in the contract and there is not even an intimation in the record that there was any overreaching or that he was not just as much at liberty to negotiate as his employers and as independent as they were with reference to the matter of employment. He voluntarily agreed with his employer that if he left their employ he would not engage in a similar business within a defined area for a period of two years and it is not denied that he made such agreement without any coercion and for his own benefit. Had he objected to the provision at the time of the contract, the probabilities are that the employer would not have hired him. I do not believe this Court should approve the violation of such a provision under the circumstances as revealed by this record. The provision is clearly not contrary to public policy and every business man knows that contracts of this type are neither unusual nor oppressive and are common practice not only in this State but elsewhere. If the employee does not desire to become bound by his solemn word and written obligation, he should not enter into the contract and thereby secure employment that he otherwise would not have had. In any event, he should not expect the courts to relieve him of the duty of fulfilling his obligations.
I think the record before us in this case requires a reversal of this cause to the end that a decree may be entered enjoining the defendant from doing that which he agreed not to do when he secured his employment.