88 So.2d 315 (1956)
Melbourne Lee Russell, Appellant,
v.
John W. MARTIN, as Trustee of the property of the Florida East Coast Railway Company, Appellee.
Supreme Court of Florida, Division A.
May 23, 1956.
Rehearing Denied July 9, 1956.
*316 George B. Mehlman and George H. Butler, West Palm Beach, for appellant.
Anderson, Scott, McCarthy & Preston, William B. Killian, Miami, Russell L. Frink, Jacksonville, and Robert H. Anderson, Miami, for appellee.
TERRELL, Justice.
Appellant, hereinafter referred to as Russell, instituted this suit against appellee, hereinafter referred to as the Railroad, to recover damages for negligently striking and killing plaintiff's minor son, Michael Lee Russell, while riding his bicycle along the tracks and over the crossing of the Railroad, within the corporate limits of the Town of Lantana, Florida. The acts of negligence alleged were: Defendant ran its train at a high and dangerous speed, in violation of the ordinance regulating speed of trains within the corporate limits of the Town of Lantana, without giving signals or warnings of the train's approach. The answer of defendant denied negligence *317 on its part and as an affirmative defense interposed an agreement between Russell and the Railroad in which Russell was given a license to use the Pine Grove Trailer Park Crossing as a private crossing. Russell also agreed to indemnify and save harmless the Railroad from any and all claims arising out of the use of said crossing; that he (Russell) would use said crossing at his own risk and would not rely on the Railroad, its agents, employees, servants or invitees for signals or warnings of approaching trains. On the issues so made, summary judgment for the Railroad was entered and Russell appealed.
The point for determination is whether or not there was error in the order granting summary judgment.
It is admitted that Pine Grove Crossing was the scene of the accident in which Michael Russell was killed. Russell contends that the question urged requires an affirmative answer because the agreement between Russell and the Railroad was devoid of mutuality. For the purpose of this suit, it is not necessary to determine whether the agreement was in effect a license or an easement subject to revocation by the Railroad. An easement is more permanent in nature than a license; it is generally for a specified period, otherwise it is not revocable by the grantor. There is accordingly no basis for the contention that the agreement is void for lack of mutuality. Whichever it was, it had been in effect seven years and the Railroad had performed on its part. The consideration running to the Railroad was Russell's agreement not to hold it liable for any accident on the crossing. Under such circumstances the contract was executed and lack of mutuality was no defense; the agreement was fully executed and was binding on the parties. Thompson v. Shell Petroleum Corp., 130 Fla. 652, 178 So. 413, 117 A.L.R. 248; Le Noir v. McDaniel, 80 Fla. 500, 86 So. 435; Restatement of the Law of Contracts, Secs. 83 and 79.
It is next contended that the crossing agreement is void because of inequality of bargaining power on the part of the parties thereto.
This contention is supported by Williston on Contracts, Sec. 1751C. When read in connection with the following paragraphs, we do not see that Sec. 1751C has any relevance to the point. Russell further contends that he bought the trailer park without knowledge of the crossing agreement between the Railroad and his predecessor in title, and finding himself in this predicament, he was forced to sign the agreement or lose the use of the right-of-way. If the Railroad had superior bargaining power, it did not impose it on Russell. It could have granted or it could have refused to grant the crossing. It took nothing in return for it except Russell's promise of indemnity. If the law of contracts has application to the crossing agreement, the Railroad made no attempt to impose or enforce it. It is common knowledge that a landowner may impose such conditions as it sees fit for granting a right-of-way over its lands.
It is last contended that Russell's promise of indemnity is void as against public policy.
Public policy is a fickle concept. No fixed rule has ever been defined by which it may be shown. It is generally conceded that a contract is not void for public policy unless it is injurious to the public or contravenes some settled social interest. Ordinarily a common carrier contract to save itself harmless from its negligence when acting as a common carrier is ineffective, but it is not so when acting in its private capacity. We have no case in this state directly in point but it is fairly well settled in other jurisdictions. Louisville & N.R. Co. v. Atlantic Co., 66 Ga. App. 791, 19 S.E.2d 364; Minneapolis-Moline Co. v. Chicago, M., St. P. & P.R. Co., 8 Cir., 1952, 199 F.2d 725, 729; J.V. McNicholas Transfer Co. v. Pennsylvania R. Co., 6 Cir., 1946, 154 F.2d 265; Santa Fe, P. & P.R. Co. v. Grant Bros. Const. Co., 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787; Cacey v. Virginian R. Co., 4 Cir., 1936, 85 F.2d 976; *318 Id., 300 U.S. 657, 57 S.Ct. 433, 81 L.Ed 866; Atlantic Coast Line R. Co. v. Beasley, 54 Fla. 311, 45 So. 761; Thomas v. Atlantic Coast Line R. Co., 5 Cir., 1953, 201 F.2d 167.
From the foregoing cases, the rule is settled in most jurisdictions that agreements by common carriers to save from indemnity for injuries at private and spur-track crossings do not contravene public policy so there was no error in the order granting summary judgment.
It follows that the judgment appealed from must be, and is hereby,
Affirmed.
DREW, C.J., and HOBSON and THORNAL, JJ., concur.