DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOSEPH S. DIMAURO,** derivatively and as a member of
**784 LAKE ROGERS, LLC,**
Appellant,

v.

**MICHAEL W. MARTIN** and **CLAUDIA A. KIWI,**
Appellees.

No. 4D22-524

[March 15, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Gregory M. Keyser, Judge; L.T. Case No. 502020CA008260XXXXMB.

Stephen J. Padula and Joshua S. Widlansky of Padula Bennardo Levine, LLP, Boca Raton, for appellant.

Arthur C. Koski of the Law Offices of Arthur C. Koski, P.A., Boca Raton, for appellees.

KLINGENSMITH, C.J.

Appellant Joseph DiMauro, a residential contractor, appeals the trial court's final judgment in favor of appellees Michael Martin and Claudia Kiwi ("Owners") arising from a dispute involving an LLC's amended operating agreement to develop and sell a new luxury single family residence, or "spec house," to be constructed on Owners' homestead property. In the final judgment, the trial court denied DiMauro's request for specific performance of the operating agreement. We find the trial court erred in finding the operating agreement was unenforceable for lack of mutuality of remedy and lack of consideration but affirm the denial of appellant's request for specific performance.

The operating agreement, in pertinent part, required (1) Owners to vacate the subject property and deed the property to the LLC, and (2) DiMauro to fund the cost of construction of the spec house on the property. Under the operating agreement's article IV, the parties' capital contributions and the members' duties were specified as follows:

Notwithstanding any term of this Operating Agreement to the contrary, the parties agree that the final determination of Capital Contributions and Membership Units for each Member shall be a function of the total capital contributed by each Member once the Manager has certified that construction of the Residence is complete (the "Certificate of Completion") . . . .

[Owners are] contributing real property known as 784 NE 35th Street, Boca Raton, FL 33431 (the "Property") and the parties have agreed that pursuant to the real property appraisal by Aucamp, Dellenbach and Whitney dated December 4, 2019, the Property has a value of $1,250,000.00. [Owners] shall deed the Property to the Company upon the execution of this Operating Agreement and, in anticipation of the demolition of the improvements on the property, [Owners] shall vacate the Property no later than March 31, 2020.

DiMauro is contributing and shall fund the cost of construction of the Residence on the Property, pursuant to the budget, plans and specifications attached hereto as Schedule "B" the total value of which will not be determined until the construction of the Residence on the Property is completed and the Manager has issued the Certificate of Completion. At the issuance the Certificate of Completion, DiMauro shall provide all Members with the total cost of construction which amount shall be the Capital Contribution of DiMauro.

The final membership profits were to be determined at the project's conclusion based on each member's capital contributions. Therefore, the operating agreement did not specify DiMauro's capital contributions' value because the total project cost was not yet determined.

In furtherance of the operating agreement, DiMauro provided Owners the construction contract which the LLC had executed with JSD, DiMauro's contracting company, along with the spec house's floor plans and preliminary budget. DiMauro also made upfront expenditures for surveys, engineering reports, soil borings, floor plans, and architectural work.

Due to COVID-19, the members were unable to meet certain deadlines in the original operating agreement, specifically the date at which Owners

were to vacate the premises and deed the property to the LLC. Accordingly, the members agreed to amend the operating agreement to extend those dates to within thirty days after the Governor lifted Executive Order 20-91's COVID official emergency declaration.

The Governor lifted that Order on May 4, 2020. However, Owners neither vacated nor deeded the property to the LLC as the operating agreement provided, despite DiMauro sending two separate demands to do so. DiMauro then sued to enforce the operating agreement, alleging breach of contract and seeking specific performance requiring Owners to vacate and deed the property to the LLC per the terms of the operating agreement.

Owners answered that the amended operating agreement was unenforceable due to a lack of mutuality of remedies and incomplete because of a lack of specificity and consideration, because the operating agreement did not specify DiMauro's specific capital contribution amount.

Following a non-jury trial, the trial court entered final judgment in Owners' favor and denied DiMauro's specific performance request. The court's judgment found a lack of mutuality of obligation and remedy, lack and want of consideration, and that DiMauro had an adequate remedy at law for damages to compensate him for money spent in furtherance of the operating agreement, making specific performance unavailable as a remedy. This appeal followed.

"The relief requested in a suit for specific performance may be granted if it is first established that the contract is valid and enforceable . . . . [I]ts status as a legal issue requires that we resolve it based on the de novo standard of review." *Free v. Free*, 936 So. 2d 699, 702 (Fla. 5th DCA 2006). "A contract requires consideration to be enforceable." *World-Class Talent Experience, Inc. v. Giordano*, 293 So. 3d 547, 548 (Fla. 4th DCA 2020).

Florida law is clear "there must exist a recognized mutuality of remedies in equity between the parties to the suit which can constitute a basis for awarding specific performance in equity to the complainant, as against the defendant." *Burger Chef Sys., Inc. v. Burger Chef of Fla., Inc.*, 317 So. 2d 795, 797 (Fla. 4th DCA 1975). "In suits for specific performance of a contract there must be mutuality of obligation and remedy." *Con-Dev of Vero Beach, Inc. v. Casano*, 272 So. 2d 203, 206 (Fla. 4th DCA 1973) (citing *Romines v. Nobles*, 55 So. 2d 563, 564 (Fla. 1951)). "Mutuality of obligation is sometimes confused with mutuality of remedy. Obligation pertains to the consideration while remedy pertains to the means of enforcement. Mutual obligation is essential, but the means of enforcement

3

may differ without necessarily affecting the reciprocal obligations of the parties." *Bacon v. Karr*, 139 So. 2d 166, 169 (Fla. 2d DCA 1962); *see Thompson v. Shell Petroleum Corp.*, 178 So. 413, 419 (Fla. 1938) (quoting 32 C.J. *Injunctions* § 297) (finding the principle of mutual obligation does not mean that "each party must have the same remedy for a breach as the other. Mere difference in the right stipulated for does not destroy mutuality of remedy . . . so long as the bounds of reasonableness and fairness are not transgressed"); *Parker v. Weiss*, 404 So. 2d 820, 821 (Fla. 1st DCA 1981) (holding that mutuality of remedy existed when the appellee was prepared at all times to purchase the property in the contract).

In construing *Burger Chef*'s "mutuality of remedies" requirement, we have held that "mutual" does not mean "identical." *See Burger Chef*, 317 So. 2d at 797. "It is well settled 'that parties to a contract may agree to limit their respective remedies and that those remedies need not be the same.'" *Redington Grand, LLP v. Level 10 Props., LLC*, 22 So. 3d 604, 608 (Fla. 2d DCA 2009) (quoting *Ocean Dunes of Hutchinson Island Dev. Corp. v. Colangelo*, 463 So. 2d 437, 439 (Fla. 4th DCA 1985)); *see also Amquip Crane Rental, LLC v. Vercon Constr. Mgmt., Inc.*, 60 So. 3d 536, 540 (Fla. 4th DCA 2011). Further, if the contract provides for each party to have an enforceable remedy against the other, even if not the same remedy, mutuality of remedy is not absent. *Blue Paper, Inc. v. Provost*, 914 So. 2d 1048, 1052 (Fla. 4th DCA 2005). In other words, while a specific performance suit requires mutuality of remedy, the means of enforcement can differ without destroying mutuality of remedy. *See Casano*, 272 So. 2d at 206; *Bacon*, 139 So. 2d at 169; *Thompson*, 178 So. at 419.

Here, the trial court found the operating agreement was unenforceable due to a lack of mutuality of remedy, because if DiMauro had breached the agreement, Owners could not have asserted specific performance against DiMauro to build the house. This was error. As long as Owners had an enforceable remedy if DiMauro breached, mutuality of remedy was not lacking, even if the remedy was not the same remedy which DiMauro could obtain against Owners. *See Casano*, 272 So. 2d at 206; *Bacon*, 139 So. 2d at 169; *Thompson*, 178 So. at 419.

Regarding the court's finding that the operating agreement was unenforceable due to a lack of consideration, this too was error. "Promises have long been recognized as valid consideration in forming a contract." *Ferguson v. Carnes*, 125 So. 3d 841, 842 (Fla. 4th DCA 2013). "[A] promise, no matter how slight, can constitute sufficient consideration so long as a party agrees to do something that they are not bound to do." *Diaz v. Rood*, 851 So. 2d 843, 846 (Fla. 2d DCA 2003) (quoting *Ashby v. Ashby*, 651 So. 2d 246, 247 (Fla. 4th DCA 1995)); *see Santos v. Gen.*

*Dynamics Aviation Servs. Corp.*, 984 So. 2d 658, 661 (Fla. 4th DCA 2008) (quoting *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1376 (11th Cir. 2005)) ("Mutual promises and obligations are sufficient consideration to support a contract."); *see also Parker*, 404 So. 2d at 821 ("[P]urchaser's promise to pay in exchange for the vendor's executory agreement was sufficient to form a binding contract.").

The operating agreement contained mutual promises by all LLC members. A valid bilateral contract can be "founded upon mutual promises to do something in the future, in which the consideration of the one party is the promise on the part of the other, each party being both a promisor and a promisee." *McIntosh v. Harbour Club Villas Condo. Ass'n*, 468 So. 2d 1075, 1076 (Fla. 3d DCA 1985) (Nesbitt, J., specially concurring). Such mutual promises create the mutuality of obligation required for a binding contract. "[W]hile parties unquestionably enjoy the freedom to limit their respective remedies under a contract, a contract must nevertheless be reasonable and must provide to a mutuality of obligation in order to be considered enforceable." *Palm Lake Partners II, LLC v. C & C Powerline, Inc.*, 38 So. 3d 844, 851 n.10 (Fla. 1st DCA 2010) (quoting *Hardwick Props., Inc. v. Newbern*, 711 So. 2d 35, 38 (Fla. 1st DCA 1998)). "The requisite mutuality of obligation entails consideration on both sides." *Id.*

By signing the operating agreement, both parties promised to do something in the future that they were not obligated to do. Owners promised to transfer the deed to the property and vacate, and DiMauro promised to cover the costs of building and selling a spec house on the property. Such mutual promises constitute adequate consideration. *See Ferguson*, 125 So. 3d at 842; *Diaz*, 851 So. 2d at 846; *Santos*, 984 So. 2d at 661; *Parker*, 404 So. 2d at 821. However, even if the operating agreement lacked consideration at its inception, the promises were nonetheless binding because DiMauro took steps to perform by advancing the various cost payments in furtherance of the operating agreement. *See Wright & Seaton, Inc. v. Prescott*, 420 So. 2d 623, 627 (Fla. 4th DCA 1982) (quoting 17 C.J.S. *Contracts* § 100(3), 799–800 (1963)) ("Although a contract is lacking in mutuality at its inception, such defect may be cured by the subsequent conduct of the parties . . . and a promise lacking mutuality at its inception becomes binding on the promisor after performance by the promisee.").

Even though the operating agreement did not specify DiMauro's capital contribution amount, DiMauro's promise to develop the spec house was clearly adequate consideration for Owners' promise to transfer the property. Further, the operating agreement expressly stated that

DiMauro's capital contribution could not be determined until after the spec house was completed. As such, the parties' mutual promises in the operating agreement would be adequate consideration to form a binding contract. *See Ferguson,* 125 So. 3d at 842; *Diaz,* 851 So. 2d at 846; *Santos,* 984 So. 2d at 661; *Parker,* 404 So. 2d at 821. While DiMauro's promise constitutes adequate consideration, his later inability to fulfill his part of the operating agreement does not mean the operating agreement lacked consideration. *See McCranie v. Cason,* 85 So. 160, 161 (Fla. 1920). Because of the nature of his promise, DiMauro could not fully complete his obligation until Owners upheld their promise to deed the property to the LLC and vacate the premises.

However, we find no error in the court denying specific performance to DiMauro because he had an adequate remedy at law. Specific performance is not a matter of right, and "[t]he decision whether to decree specific performance of a contract is a matter that lies within the sound judicial discretion of the trial court and it will not be disturbed on appeal unless it is clearly erroneous." *Free,* 936 So. 2d at 702.

Specific performance is an appropriate remedy only when there is no adequate remedy at law, and a party that has an adequate remedy at law is not entitled to specific performance. *Vagabond Travel and Tours, Inc. v. Universal Inns of Am., Inc.,* 440 So. 2d 482, 483 (Fla. 2d DCA 1983). Specific performance is available only where, under the circumstances of a particular case, an action at law for compensatory damages for the defendant's breach of the contract by virtue of his or her failure to carry out the agreement would be inadequate to afford complete justice between the parties. *See Bird Lakes Dev. Corp. v. Meruelo,* 626 So. 2d 234, 238 (Fla. 3d DCA 1993). This court has held that compensatory damages are an adequate remedy at law and can preclude specific performance even in cases involving land sale contracts. *See Hiles v. Auto Bahn Fed'n, Inc.,* 498 So. 2d 997, 999 (Fla. 4th DCA 1986); *Wolofsky v. Behrman,* 454 So. 2d 614, 615 (Fla. 4th DCA 1984) (awarding damages in a land-sale contract instead of specific performance).

While land is considered unique and the court may grant specific performance in cases dealing with land-sale contracts, the trial court has discretion to decide whether to grant or deny specific performance when not expressly provided for in the contract. *See Mann v. Thompson,* 100 So. 2d 634, 637 (Fla. 1st DCA 1958); § 672.716(1), Fla. Stat. (2020). Here, the operating agreement does not limit the parties' remedies. As such, DiMauro has an adequate remedy at law in money damages for breach of contract.

We reverse the court's final judgment finding that the parties' operating agreement and its subsequent amendment was unenforceable for lack of mutuality and consideration and remand for further proceedings. We affirm the court's denial of appellant's request for specific performance.

*Affirmed in part, reversed in part, and remanded.*

CIKLIN, J., concurs.
WARNER, J., concurs specially with opinion.

WARNER, J., concurring specially.

I concur in the majority's conclusions that the contract was enforceable, because it did not lack mutuality of obligation or remedy. The trial court made an alternative ruling that even if the operating agreement was enforceable, specific performance was unavailable because appellant had an adequate remedy at law. The majority affirms that ruling, and I agree.

The majority's "remand for further proceedings" should be limited to the assessment of attorney's fees and costs. In the original complaint, appellant sought only specific performance, not damages. At no time did appellant seek to amend the pleadings to seek the alternative relief of damages. Therefore, this court cannot give the appellees a second bite at the apple. To do so would conflict with supreme court precedent. As the supreme court has stated, "[A] procedure which allows an appellate court to rule on the merits of a trial court judgment and then permits the losing party to amend his initial pleadings to assert matters not previously raised renders a mockery of the 'finality' concept in our system of justice." *Dober v. Worrell,* 401 So. 2d 1322, 1324 (Fla. 1981). Hence, our remand should not be considered as authority for appellant to seek additional relief in this proceeding.

\*     \*     \*

**Not final until disposition of timely filed motion for rehearing.**