Jack Tratenberg, Inc., v. Komoroff

2

*J. J. Katz*, for plaintiff.
*Cohen & Cohen*, for defendant.

LEVINTHAL, J., December 26, 1951.—

## I. *Pleadings and Issues*

The bill alleges that plaintiff is the corporate assignee of all the assets formerly owned by Jack Tratenberg in the business of selling certain merchandise on an installment basis; that on February 8, 1949, Jack Tratenberg and defendant entered into an agreement of employment wherein defendant agreed, upon termination of his employment as a salesman-collector, not to serve or solicit, directly or indirectly, the trade of Jack Tratenberg within certain routes assigned to him for a period of six months; that on September 14, 1951, within six months after the termination of defendant's employment as a salesman-collector with plaintiff, defendant began to solicit the trade of plaintiff contrary to the agreement of the parties. Plaintiff seeks to enjoin defendant from further violating the contract and to require defendant to account to plaintiff for damages growing out of defendant's past violation.

The answer avers that defendant was employed by Jack Tratenberg for the period September 1946 to February 8, 1949, which was prior to the signing of the written contract referred to in plaintiff's bill; that during this period plaintiff was under no restriction as to his selling activities upon termination of his employment with Jack Tratenberg; that during this period, defendant had built up considerable good will and a personal following; that the contract of February 8, 1949, in no material respect altered the terms of his

employment as they existed prior to and on that date; and that the contract was of a personal nature and, therefore, not assignable by Jack Tratenberg to plaintiff corporation or to any other third party.

## II. *Findings of Fact*

1. In September 1946 defendant entered into an oral contract of employment with Jack Tratenberg, whereby defendant agreed to act as salesman-collector in Tratenberg's installment business.

2. At the time of entering the employ of Jack Tratenberg in September 1946 defendant had no customer following in the selling area assigned him by Jack Tratenberg.

3. The oral contract of September 1946 contained no provision with respect to the giving of notice prior to termination of the employment, but was terminable at the will of either party.

4. Under the oral contract of September 1946 defendant agreed to accept, in addition to commissions on sales and collections, a $10 per week automobile expense allowance as the consideration for his services.

5. Prior to February 8, 1949, defendant had succeeded in developing a considerable customer following in the area assigned to him by Jack Tratenberg.

6. On February 8, 1949, Jack Tratenberg and defendant entered into a written contract, in which defendant promised to refrain from soliciting the trade of Jack Tatenberg within any territory or route served by defendant for a period of six months following termination of his employment.

7. The contract of February 8, 1949, provided for the giving of 15 days' notice prior to termination, by either party, of defendant's employment.

8. Jack Tratenberg agreed, in the contract of February 8, 1949, to pay defendant "weekly wage and commissions in accordance with the basis established by Jack Tratenberg for his salesmen-collectors".

4

9. The basis of compensation payable to the employes of Jack Tratenberg is set forth in an agreement entered into, also on February 8, 1949, between Jack Tratenberg and the United Credit Store Employees Union, Local 117.

10. The union contract of February 8, 1949, provided that the salesmen-collectors of Jack Tratenberg were to receive as "Salaries and Commissions . . .", in addition to their commissions, $12.00 per week toward car hire".

11. On June 22, 1949, Jack Tratenberg assigned all contracts and agreements relating to his business to plaintiff, Jack Tratenberg, Inc.

12. Defendant knew of the incorporation of the business of his employer.

13. The management and the personnel of the business of defendant's employer were unchanged following the incorporation.

14. Defendant continued in the employ of Jack Tratenberg, Inc., after June 22, 1949, until September 5, 1951, during which period the terms of defendant's employment remained exactly as provided in the contract of February 8, 1949.

15. On September 5, 1951, defendant terminated his employment with Jack Tratenberg, Inc.

16. Since September 5, 1951, and within six months from that date, defendant has at various times solicited the trade of Jack Tratenberg, Inc., in the territory which defendant had formerly served while in the employ of Jack Tratenberg, Inc.

### III. *Discussion*

Two questions are raised by defendant's motion to dismiss the bill: First, whether the written contract of February 8, 1949, containing the negative covenant, is supported by good and legally sufficient consideration;

second, whether the contract is enforcible by the corporate assignee of Jack Tratenberg who executed the contract initially in an individual capacity.

Defendant relies, in support of his contention that the contract is unenforcible for want of sufficient consideration, on the case of Markson Bros. v. Redick, 164 Pa. Superior Ct. 499 (1949). It was there sought to enjoin breach of a similar covenant prohibiting competition on the part of a dress shop employe with his former employer. There, as in the case at bar, the negative covenant appeared as part of a written contract of employment, the writing having been executed not at the commencement of the employment relationship but after it had been in existence for sometime pursuant to an oral agreement between the parties. The only change in the terms of the oral contract made by the written agreement was that the employe was entitled under the latter to a week's notice prior to termination of her employment, whereas the verbal contract was terminable at will. Enforcement of the covenant was denied in the Markson Bros. case (at page 505) for the reason that "(this) change . . . was neither a detriment to the plaintiff nor a benefit to the defendant and in itself did not supply a consideration for the written contract".

The controlling legal principle in the Markson Bros. case is found in the following clear language (page 505):

"This written agreement was in partial restraint of trade and a contract of this nature to be enforcible, must, as one of the essential elements, be founded upon a good and sufficient consideration."

While the facts of the Markson Bros. case bear a striking similarity to those in the instant case, one important difference appears. The employe in that case already had a large following of business customers at the time she entered the employ of plaintiff.

Present defendant, on the other hand, brought no customers with him when he joined plaintiff's organization, but acquired his following after entering plaintiff's employ and, indeed, as a part of his duties under the then oral agreement of hire. The significant, if not controlling, effect of this fact is pointed out in a footnote to the Markson Bros. opinion (at page 504), where the Superior Court distinguishes that case from the situation in Standard Dairies, Inc., v. McMonagle, 139 Pa. Superior Ct. 267 (1939), on the ground that "McMonagle had no following nor customers when he entered the employ of Standard Dairies".

At the same time the court noted the similarity of Iron City Laundry Co. v. Leyton, 55 Pa. Superior Ct. 93 (1913), which "turned upon the fact that Leyton had many established customers of his own when he entered the employ of the laundry company". (It may be noted, in passing, that in Philadelphia Dairy Products Co., Inc., v. Kleiman, 36 D. & C. 643 (1939), we had occasion to discuss the sufficiency of the consideration for a restrictive covenant in an employment contract, and we distinguished that case from Seward v. Shields, 9 Dist. R. 583 (1900), by pointing out, at page 649, that in the one case all the customers had been obtained during the term of employment and at the employer's expense, whereas in the other the employe had "obtained all the customers himself without any aid whatsoever from his employer".)

The instant case is somewhat complicated by a further fact which appears in none of the cited cases. As indicated, present defendant had no personal following at the time he originally entered plaintiff's employ. However, he had acquired such a following prior to the execution of the restrictive covenant contract on February 8, 1949. It cannot be disputed that at any time prior to this date defendant was perfectly free, as a matter of purely legal right, although of dubious

moral right, to solicit, after the termination of his employment, those very customers of plaintiff whose accounts he had been servicing. It may be conceded that defendant's claim rises higher than that asserted in Standard Dairies where the restrictive covenant was contained in the contract of initial hiring. On the other hand, defendant's contention has far less appeal, equitably considered, than that of the employe in the Markson Bros. case whose customer following had been built up as the result of 25 years of completely independent labor so far as plaintiff there was concerned. In our view of the authorities, the peculiar circumstances of this case must be weighed carefully in passing on the *sufficiency* of the consideration given defendant in support of the restrictive covenant.

Turning then to the problems of actually measuring the disputed consideration in a case like the instant one, it should be borne in mind that what must be shown is a substantial increase of or addition to the employe's rights under the new written contract as compared with the preëxisting oral one. Plaintiff contends that the written agreement changed the terms of defendant's employment in two respects.

First, the writing provides for the giving of 15 days' notice prior to termination of the contract by either party. There is a dispute as to whether any such notice was required by the prior oral contract. We accept plaintiff's testimony to the effect that no notice was required formerly and that the relationship was terminable at the will of either party. (As to the general rule that "when a contract provides that one party shall render services to another . . . but does not specify a definite time or prescribe conditions which shall determine the duration of the relation, the contract may be terminated by either party at will", see Cummings v. Kelling Nut Co., 368 Pa. 448, 451 (1951).)

Defendant further contends that when he executed the contract on February 8, 1949, he was already entitled to the 15 days' notice by virtue of the labor union contract executed by plaintiff with representatives of his collector-salesmen earlier that day. He argues that since the union contract was executed immediately prior to the execution of the individual employment contract, there was no addition to defendant's rights by virtue specifically of the restrictive covenant contract. It is clear from all the evidence that the two contracts were executed practically simultaneously, and it is immaterial which was actually signed a few moments earlier. If defendant had refused to sign the restrictive covenant contract, he would not have continued in the employ of Tratenberg and the union contract would therefore have had no application to him whatsoever. Consequently, we are of the opinion that the 15 days' notice was a new provision which came into effect when the negative covenant was executed. It should, however, be borne in mind that under the Markson Bros. case the notice provision alone cannot be regarded as sufficient consideration for the restrictive covenant, for obviously there is no substantial difference between the 15 days' notice in the instant case and the one week's notice in the Markson Bros. case.

A second change in the terms of the employment, plaintiff contends, is in the fact that defendant's automobile allowance was increased from $10 to $12 weekly, in accordance with the terms of the union contract. Defendant sought to exclude evidence of this increase on the ground that any reference to the entirely separate union agreement, which provided for such allowance, violates the parol evidence principle. In support of this position he relies on a provision of the employment contract which states that "this contract represents the entire agreement between (the

parties) and that there are no verbal contracts or agreements other than those set forth herein". ·

The chancellor initially sustained defendant's objection, but subsequently admitted the evidence. We believe the evidence was admissible for the reasons set forth in the recent adjudication by Judge Hagan in Jack Tratenberg, Inc., v. Snyder, Common Pleas No. 1, June term, 1950, no. 6947, a case which involved the same contract as is here in dispute. It was there said:

"If the employment contract had exactly defined the defendant's compensation, the defendant's objection to the introduction of parol evidence would have been valid. However, the compensation of the defendant in the employment contract is defined to be the 'weekly wage and commissions in accordance with the basis established by Jack Tratenberg for his salesmen-collectors'."

Since the employment contract itself contained no further reference to the subject of compensation, the court correctly concluded that "resort necessarily must be had to parol evidence to determine the basis on which the weekly wage and commissions of the defendant was established". Therefore, plaintiff's evidence of the $2 increase in automobile allowance may properly be considered.

It is our opinion that this weekly increase in defendant's compensation, added to the 15 days' notice requirement, constituted good and sufficient consideration for the restrictive covenant under the particular circumstances of the instant case. Due weight has been given the fact that defendant, in temporarily restricting the scope of a possible future field of operation, was simply agreeing not to solicit customers whose patronage had originally been obtained at plaintiff's expense and whom defendant should morally and in good conscience, although not legally, have regarded as his employer's customers, and not his own. This

moral consideration should be taken into account, as indicated in the footnote to the Markson Bros. case aforementioned.

We do not mean to intimate that the consideration received by this defendant would be sufficient to support any and every contract in partial restraint of trade. We do not imply that it would support a restrictive covenant given under circumstances such as those in the Markson Bros. case, where the customer-following was the employe's own in every sense of the word. Where, however, as here, the matter in issue is the *sufficiency* of the consideration, the circumstances of the individual case should control. The particular circumstances of this case satisfy us, sitting as a court of equity, that the covenant is not rendered unenforcible by reason of an insufficiency of consideration.

Defendant's second argument in opposition to the prayer for injunctive relief is that the contract of employment, being of a personal nature, is not assignable, and that the restrictive covenant cannot, therefore, be enforced by plaintiff corporation. Unquestionably, this defense would be available to an employe who either was ignorant of the purported assignment of his employment contract, or who, knowing of it, withheld his assent thereto. There is, however, ample evidence in this case that defendant knew of the assignment. He was certainly put on notice of his employer's incorporation by the fact that after June 22, 1949, his pay checks bore every indication that it was the corporation that was paying his commissions and expenses. Added to this is the fact that defendant handled advertising novelties and individual customers' account books, all bearing the legend "Jack Tratenberg, Inc." Moreover, there is no evidence that defendant gave voice to even the slightest protest to the new arrangement at any time while he continued to work for plaintiff after the incorporation. On the contrary, defend-

ant's employment continued exactly as before. He rendered the same services and received the same commissions and allowances as theretofore.

In view of these circumstances, we find that defendant must be regarded as having assented, at least implicitly, to the assignment to plaintiff corporation of defendant's contract with his former employer. The case is controlled, in our view, by the principle expressed as follows in section 162, subsec. (2), of the A. L. I. Restatement of the Law of Contracts:

"If such assent (to the assignment of a right) is manifested after the creation of a contract, the assent is . . . effective if it is given for sufficient consideration or the facts are such that an informal promise would be binding, or if, in reasonable reliance on the manifestations, a material change of position takes place."

Defendant's assent to the assignment is manifested by the fact that he continued in the employ of plaintiff without protest and under precisely the same conditions as had been in effect prior to the assignment. That plaintiff relied on this manifestation of assent may be inferred from the mere fact that defendant was retained in plaintiff's employ. There is every reason to believe that, had defendant given notice that he was treating the contract as abrogated in consequence of the attempted assignment, he would immediately have been replaced. In fact, there is direct evidence from defendant himself that earlier Tratenberg had been absolutely insistent on the written contract as a condition to defendant's continued employment.

We experience a further doubt as to the validity of defendant's contention that the contract in question was not assignable. We, of course, recognize the general principle prohibiting the assignment of one's right under an employment contract calling for the perform-

ance of services of a personal nature. Our doubt arises over the applicability of this principle to the case at hand. Plaintiff's bill does not seek to compel performance of any affirmative personal duty under the employment contract. On the contrary, what is sought is the injunction of defendant's breach of the wholly negative covenant not to solicit certain of plaintiff's customers. It is plain that the reason for the rule of nonassignability is absent where the assignee seeks simply to enjoin breach of a contractual provision which can be of effect only after the termination of the personal employment relationship. In our opinion, the extension of the principle of nonassignability to a situation in which the reason for the rule is clearly nonexistent will lead to illogical and inequitable results. (We have considered the cases of Avenue Z Wet Wash Laundry Co., Inc., v. Yarmush et al., 221 N. Y. S. 506 (1927), and Seligman & Latz v. Noonan, 104 N. Y. S. 2d, 35 (1951), cited by defendant in support of his contention, but find them unpersuasive.)

There is still another circumstance in this case that may be mentioned. The assignment of an employment contract to a corporation, as here, where the management and personnel of the employer's business remain unchanged after the assignment, cannot in equity be regarded as materially prejudicial or disadvantageous to the employe. The language of the opinion in the case of Walker et al. v. Mason, 272 Pa. 315, 319 (1922), is especially pertinent:

"We find no change in the personnel of the plaintiff firm after its incorporation, in fact, there was none. The business was owned and operated by the same persons with the same employees and the identical plant equipment, nor was there a material change in its management. The sole change was in the legal entity from a partnership to a corporation. It does not ap-

pear how this difference, practically in name only, so far as this case. is concerned, could possibly have affected the performance of the contract."

For all the reasons mentioned, we are of the opinion that plaintiff corporation is entitled to enforce the restrictive covenant in defendant's employment contract.

## IV. *Conclusions of Law*

1. On February 8, 1949, defendant and plaintiff's assignor executed a binding contract in partial restraint of trade.

2. Defendant's promise to refrain from soliciting certain customers of plaintiff's assignor, for six months after termination of his employment, was adequately supported by the provision in the contract of February 8, 1949, requiring the giving of 15 days' notice prior to termination of defendant's employment, together with the increase from $10 to $12 weekly of defendant's automobile expense allowance.

3. Defendant's knowledge of the incorporation of his former employer and his conduct in continuing in plaintiff's employ without objection thereafter constitute assent to the assignment to plaintiff of defendant's employment contract.

4. Defendant's acts within six months after the termination of his employment with plaintiff, the assignee of Jack Tratenberg, constituted breach of the negative covenant.

5. Plaintiff, as assignee of Jack Tratenberg, may enforce the negative covenant.

6. Plaintiff is entitled to injunctive relief.

7. Plaintiff is entitled to an accounting from defendant for any profits realized by defendant as a result of soliciting the customers of Jack Tratenberg and Jack Tratenberg, Inc., within the area restricted by the contract of February 8, 1949.

*Decree Nisi*

And now, to wit, December 26, 1951, defendant, Seymour Komoroff, is hereby restrained from soliciting or selling, directly or indirectly, any and all of the customers whom he sold and collected from while in the employ of Jack Tratenberg, individually, or Jack Tratenberg, Inc.

Defendant shall account to plaintiff corporation for all profits derived by him from all sales to customers in violation of the restrictive covenant.

This decree nisi shall become final unless exceptions thereto are filed within 10 days from the date hereof.